JTM: USAO# 2015R00566

FILED ___ ENTERED
___ LODGED ___ RECEIVED

MAR 28 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. ELH-19-0160 |
| | * | |
| v. | * | (Conspiracy to Use Fire to Commit a Federal Felony and to Commit Malicious Destruction of Real Property by Fire, 18 U.S.C. §§ 844(m), (n); Use of Fire To Commit a Federal Felony, 18 U.S.C. § 844(h)(1); Malicious Destruction of Property by Fire, 18 U.S.C. § 844(i); Wire Fraud, 18 U.S.C. § 1343; Aiding and Abetting, 18 U.S.C. § 2; Forfeiture, 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, 28 U.S.C. § 2461(c)) |
| DEMETRIOS STAVRAKIS, a/k/a "Dimitrios Stavrakis," a/k/a "Jimmy," | * | |
| Defendant | * | |

*******

# INDICTMENT

## COUNT ONE
(Conspiracy to Use Fire to Commit a Federal Felony and to
Commit Malicious Destruction of Real Property by Fire)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Indictment:

### Introduction

1. Defendant **DEMETRIOS STAVRAKIS, a/k/a "Dimitrios Stavrakis," a/k/a "Jimmy,"** (hereinafter "**STAVRAKIS**") born 1965, was a resident of Lutherville-Timonium, Maryland.

2. Unless otherwise specified, the entities described in Paragraphs 3 through 7 are related through **STAVRAKIS** and are collectively referred to herein as "ADCOR."

3. **STAVRAKIS** was the president of ADCOR Industries, Inc., ("ADCOR Industries) a precision machine part manufacturer operating out of a building located at 234 S.

1

Haven Street, Baltimore, MD (hereinafter "234 S. Haven Street").

4. **STAVRAKIS** had a 50% ownership interest in ADCOR Packaging, LLC, ("ADCOR Packaging), a company that manufactured parts and assembled machines that bottled beverages. ADCOR Packaging also operated out of the building located at 234 S. Haven Street.

5. The property located at 234 S. Haven Street was owned by T.J. Enterprises, LLC, a real estate holding company owned by **STAVRAKIS**.

6. ADCOR Industries created ADCOR Defense in 2009 to market firearms, after obtaining a Federal Firearms License (FFL) through the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). ADCOR Industries produced upper receivers for Colt and patented an M-4 style rifle which was developed in 2008 and marketed by ADCOR Defense.

7. ADCOR Services, LLC, was created and owned by **STAVRAKIS**. ADCOR Services, LLC, was utilized for labor services and to make payroll payments.

8. By manufacturing parts for customers in the beverage, aerospace, firearms, and defense industries, ADCOR used the property at 234 S. Haven Street in interstate commerce and in activities affecting interstate commerce.

9. Goodman-Gable-Gould/Adjusters International ("GGG") is a public adjuster firm hired by insurance policyholders to assist with the process of submitting an insurance claim and expediting the receipt of insurance proceeds after a loss.

### Prior Insurance Claims

10. On or about February 18, 2003, the roof of the ADCOR building located at 234 S. Haven Street, collapsed under the weight of accumulated snow. The property was insured by the Hartford Insurance Company ("Hartford Insurance"). The loss claimed by

ADCOR was over $12 million. After litigation, Hartford Insurance paid approximately $7 million on this claim.

11. On or about May 9, 2007, there was a fire at a building located at 910 S. Grundy Street, Baltimore, Maryland, owned and used by ADCOR to store product and equipment. The property was insured by Berkley Mid-Atlantic Group, Fireman's Insurance Company of Washington, DC ("Fireman's Insurance"). ADCOR retained to GGG to assist in compiling and submitted a claim to Fireman's Insurance. Fireman's Insurance paid approximately $10.8 million on the claim. ADCOR did not use the proceeds to rebuild the property at 910 S. Grundy Street; rather, ADCOR used the proceeds to purchase equipment and make capital improvements at 234 S. Haven Street. In November of 2007, two Makino A61 machines were purchased for $283,065 each. And in December of 2008, two more Makino A61 machines were purchased for $295,744.26 each.

**Financial Condition of ADCOR Prior to the Fire**

12. From 2010 through 2014, ADCOR Industries posted operating losses in their respective end of year financial statements ranging from $499,014 to $3,753,709.

13. In 2012, ADCOR Industries incurred an operating loss of $1,847,407. To offset these losses, **STAVRAKIS** entered into a personal loan agreement to borrow $5,000,000 in 2012. Proceeds from this personal loan were used in part to repay other loan obligations.

14. In 2013, ADCOR Industries posted an operating loss of $1,518,969. In order to meet growing debt obligations under a loan forbearance agreement with M&T Bank, ADCOR sold assets to include its Beverage Division to ADCOR Packaging Group in order to eliminate intercompany payables due to ADCOR Packaging Group. Sales of these assets generated

3

$2,591,184. As a result, in 2013, ADCOR Industries reflected net income of $952,834.

15. In 2013, an independent accounting firm reviewed ADCOR's financial statements and concluded that, "[a]s of December 31, 2013, the balance of cash and cash equivalents is inadequate to fund operations through December 31, 2014. These factors raise concerns about ADCOR's ability to continue as a going concern." The statement was intended to advise ownership, and also to warn potential investors, that ADCOR Industries was at risk of becoming insolvent.

16. In 2014, ADCOR sold its Beverage Division to an outside competitor for more than $9 million. **STAVRAKIS'S** portion of the proceeds of this sale were used, in part, to repay loans, and inject working capital into the remaining ADCOR businesses.

17. In 2014, the same independent accounting firm (supra ¶ 15) reviewed ADCOR's financial statements and concluded that, "As of December 31, 2014, the balance of cash and cash equivalents is inadequate to fund operations through December 31, 2015. These factors raise concern about the company's ability to continue as a going concern." Again, this statement was intended to advise ownership and warn potential investors that ADCOR Industries remained at risk of insolvency.

18. In 2012 and 2014, ADCOR defaulted on loans, and as a result, entered into forbearance agreements with a succession of lenders, first M&T Bank, then 1st Mariner Bank, and then Bank of America.

19. From 2012 through July of 2015, ADCOR failed to timely pay suppliers including Alpha Grainger, FN Manufacturing, LLC, Hadco Metal Trading Co., LLC, and Admiral Metals. Suppliers sent some of the past due balances owed by ADCOR to collection.

4

20. On or about June 25, 2015, ADCOR filed a complaint against Beretta U.S.A. Corporation alleging multiple civil claims, including breach of contract, in Baltimore County Circuit Court. In order to fund this litigation, ADCOR entered into a loan agreement with Global Credit Recovery, LLC, a firm that loaned up to $750,000 in exchange for 20% quarterly interest, as well as 10% of any settlement or award ADCOR realized from the lawsuit.

21. As of July 2015, several of the machines at ADCOR had been in use for over thirty years, having first been placed into service in 1984 and 1985, including two LaBlond Makino MC-65 Machines, two LaBlond Makino FMC 106/A30 Machines, and one Matsuura MC 500V2 Machine. As of July 2015, at least two machines at ADCOR were not in working order. In addition, the four Makino machines put into service in late 2007 were depreciated on an accelerated basis for tax purposes and were either fully depreciated or nearly fully depreciated by July of 2015. For example, the Makino machines placed into service in late 2007 (see ¶ 11, supra) were reported at 10 year straight-line depreciation; as a result, as of July 2015, these machines were 75% depreciated for financial statement purposes.

22. From January 2015 through July 2015, ADCOR Industries posted net monthly losses. The cumulative loss for ADCOR Industries from January 1, 2015 through June 30, 2015, was $779,171.71. In this same time frame, cumulative net operating losses were $241,809.66.

### The Victim Insurance Company and Policies

23. Travelers Indemnity Company of America (hereinafter "Travelers"), was an insurance company headquartered in Connecticut authorized to transact business in Maryland. Travelers' data centers, including the servers for Travelers' email, were located in Georgia and Nebraska.

24. Travelers issued a commercial property insurance policy to ADCOR Industries (hereinafter "ADCOR Industries policy"), effective through July 1, 2016. The coverage limits of the policy were $4,291,000 for the building, $12,825,000 for business personal property, and $5,050,100 for business income.

25. ADCOR Packaging had a commercial property insurance policy from Travelers Insurance (hereinafter "ADCOR Packaging policy"), effective through July 1, 2016. The coverage limits of the policy were $1,000,000 for contents, and $300,000 for business income and expenses.

26. Travelers' insurance policies excluded coverage for "Intentional Loss" defined as, "Any act an insured commits or conspires to commit with the intent to cause a loss. In the event of such loss, no insured is entitled to coverage, included insureds who did not commit or conspire to commit the act causing the loss."

27. Travelers' insurance policies excluded coverage for "Dishonesty or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone with whom you entrust the property for any purpose: (1) Acting alone or in collusion with others; or (2) Whether or not occurring during the hours of employment."

### The Charge

28. Beginning at a time unknown to the Grand Jury, but at least as of on or about July 28, 2015, and continuing through on or about August 5, 2016, in the District of Maryland and elsewhere, the defendant,

**DEMETRIOS STAVRAKIS,**
a/k/a "Dimitrios Stavrakis,"
a/k/a "Jimmy,"

knowingly and willfully, conspired and agreed with others known and unknown to the Grand Jury:

    a. to knowingly use fire to commit a felony prosecutable in a court of the United States, said felony being to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Travelers Insurance and to obtain money and property by means of false and fraudulent pretenses, representations, promises, and material omissions, in violation of Title 18, United States Code Section 1343, and

    b. to maliciously damage and destroy, by means of fire, any building and other real and personal property used in interstate commerce and in activities affecting interstate commerce.

### Object of the Conspiracy

29. It was the object of the conspiracy to intentionally set fire to the commercial property located at 234 S. Haven Street for the purpose of causing Travelers to pay insurance proceeds under the ADCOR Industries policy and the ADCOR Packaging policy to which ADCOR was not entitled and from which **STAVRAKIS** unlawfully benefitted.

### Manner and Means of the Conspiracy

30. It was part of the conspiracy that **STAVRAKIS** discussed burning the commercial property located at 234 S. Haven Street with others known and unknown to the Grand Jury.

31. It was further part of the conspiracy that **STAVRAKIS** agreed to a plan to set fire

to the commercial property at 234 S. Haven Street in order to obtain insurance proceeds from Travelers under the policies issued to ADCOR Industries and ADCOR Packaging.

32. It was further part of the conspiracy that **STAVRAKIS** took steps to defeat the security system at the front door of 234 S. Haven Street in an effort to allow one or more persons known and unknown to the Grand Jury to gain entry for the purpose of setting fire to the property.

33. It was further part of the conspiracy that a person or persons known and unknown to the Grand Jury deliberately set fire to the commercial property located at 234 S. Haven Street.

34. It was further part of the conspiracy that **STAVRAKIS** submitted claims to Travelers for insurance proceeds under the ADCOR Industries policy and ADCOR Packaging policy.

## Acts in Furtherance of the Conspiracy

35. On or about July 28, 2015, at approximately 5:52:12 p.m. and 5:53:52 p.m., **STAVRAKIS** utilized tape in an effort to defeat one of the security features on the front door for the purpose of assisting a person or persons unknown to the Grand Jury to enter ADCOR at 234 S. Haven Street and set a fire therein.

36. On or about July 29, 2015, at approximately 12:25 a.m., a person or persons known and unknown to the Grand Jury entered ADCOR at 234 S. Haven Street and disarmed the alarm for "Partition 1" of the interior of ADCOR by entering the four-digit code.

37. On or about July 29, 2015, at approximately 12:33 a.m., a person or persons known and unknown to the Grand Jury entered ADCOR at 234 S. Haven Street and disarmed the alarm for "Partition 2" by entering the four-digit code.

8

38. On or about July 29, 2015, between approximately 12:25 a.m. and 1:30 a.m., a person or persons unknown to the Grand Jury set fire to ADCOR at 234 S. Haven Street by use of a flammable liquid known as Methyl Ethyl Ketone ("MEK"), a solvent used as a cleaning agent, which was poured out in a small self-contained office area of the warehouse known as the "DNC Hut." The fire destroyed the DNC Hut, its contents, and damaged a portion of the ceiling directly above the DNC Hut.

39. On or about July 29, 2015, **STAVRAKIS** called GGG to notify them of the fire, and to request that GGG assist in the claims process with Travelers. GGG, in turn, notified Travelers of the fire.

40. On various dates between July 29, 2015 and August 5, 2016, GGG, acting on behalf of **STAVRAKIS**, ADCOR Industries, and ADCOR Packing, submitted false and fraudulent claims for insurance proceeds to Travelers in a collective amount of over $21 million.

41. On various dates between July 29, 2015, and August 5, 2016, **STAVRAKIS** caused Traveler to pay the claims submitted by GGG on behalf of **STAVRAKIS**, ADCOR Industries, and ADCOR Packaging, and Travelers did so by mailing checks payable to ADCOR Industries and ADCOR Packaging through the United States Postal Service and private and commercial interstate carrier from Connecticut and Georgia to Maryland, and communications regarding same caused wires to travel in interstate commerce. Travelers paid approximately $14,721,071.55 total on the claims submitted under the ADCOR Industries Policy, and approximately $360,364 total on the claims submitted under the ADCOR Packaging Policy.

42. The money paid on the insurance claims was used by ADCOR to cover a variety of business-related expenses, including, but not limited to, the following (in approximate

amounts): $6,591,856.66 used to purchase new machines and equipment, including four horizontal machining centers valued at approximately $1.5 million; $917,729.75 in firearms parts inventory; $1,474,809.30 in cleaning and repairs; $635,191.43 building restoration, including $216,237.21 in electrical repairs and restoration; and $60,180 business income and extra expenses. In addition, insurance proceeds were transferred or used for other expenses, including, but not limited to, the following: on or about October 2, 2015, $600,000 was transferred to PNC account ending 3156 in the name of **STAVRAKIS'S** wife, after which regular monthly payments of approximately $6,000 followed; on or about November 5, 2015, approximately $98,499.20 to Mercedes of Catonsville for the purchase of a 2016 Mercedes-Benz GL 550, titled and registered to **STAVRAKIS**; and on or about September 4, 2015, approximately $25,500 to Williamsport Harley-Davidson for a 2016 Street Glide.

18 U.S.C. §§ 844(h), (i), (m), (n)

## COUNT TWO
### (Use of Fire to Commit a Federal Felony)

The Grand Jury for the District of Maryland further charges that:

1. The allegations contained in Paragraphs 1 through 27 and 29 through 42 of Count One are incorporated here.

2. Beginning at a time unknown to the Grand Jury, but no later than on or about July 28, 2015, and continuing until on or about August 5, 2016, the defendant,

**DEMETRIOS STAVRAKIS,**
**a/k/a Dimitrios Stavrakis,**
**a/k/a "Jimmy,"**

knowingly used fire to commit a felony prosecutable in a court of the United States; to wit: wire fraud in violation of Title 18, United States Code, Section 1343, as charged in Count Four of this Indictment and incorporated here.

18 U.S.C. § 844(h)(1)
18 U.S.C. § 2

## COUNT THREE
### (Malicious Destruction of Real Property by Fire)

The Grand Jury for the District of Maryland further charges that:

1. The allegations contained in Paragraphs 1 through 27 and 29 through 42 of Count One are incorporated here.

2. Beginning at a time unknown but not later than July 28, 2015, and continuing until on or about August 5, 2016, the defendant,

**DEMETRIOS STAVRAKIS,**
a/k/a **Dimitrios Stavrakis,**
a/k/a **"Jimmy,"**

aided and abetted the malicious damage and destruction, by means of fire, of any building and other real and personal property used in interstate commerce and in activities affecting interstate commerce, to wit: the ADCOR building located at 234 S. Haven Street.

18 U.S.C. § 844(i)
18 U.S.C. § 2

## COUNT FOUR
## (Wire Fraud)

1. The allegations contained in Paragraphs 1 through 27 and 29 through 42 of Count One are incorporated by reference here.

2. Beginning at a time unknown to the Grand Jury, but at least as of on or about July 29, 2015, and continuing through August 5, 2016, the defendant,

**DEMETRIOS STAVRAKIS,**
**a/k/a Dimitrios Stavrakis,**
**a/k/a "Jimmy,"**

devised and intended to devise a scheme to defraud Travelers Insurance Company, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises from Travelers Insurance Company.

### The Scheme and Artifice to Defraud

3. It was part of the scheme to defraud that **STAVRAKIS** intended to cause damage to the commercial property at 234 S. Haven Street.

4. It was further part of the scheme to defraud that **STAVRAKIS** caused notification to be made to Travelers which was false, fraudulent, and omitted material facts regarding the fire at 234 S. Haven Street.

5. It was further part of the scheme to defraud that **STAVRAKIS** caused claims to be made to Travelers for insurance proceeds for loss caused by a fire that he conspired with, and aided and abetted, one or more person known and unknown to intentionally set.

6. It was part of the scheme to defraud that **STAVRAKIS** sought to obtain insurance proceeds from the fire at 234 S. Haven Street.

7. It was further part of the scheme to defraud that **STAVRAKIS** made false and

fraudulent statements and omitted material facts to GGG, knowing GGG would file a claim with Travelers.

8. It was further part of the scheme to defraud that **STAVRAKIS** used and caused to be used interstate wires in order to communicate with Travelers.

### The Charge

9. On or about July 29, 2015, in the District of Maryland and elsewhere, the defendant,

**DEMETRIOS STAVRAKIS,**
**a/k/a "Jimmy,"**
**a/k/a Dimitrios Stavrakis,**

for the purpose of executing the scheme described above, and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce the following signals and sounds; to wit, a telephone call from Maryland to the claims center for Travelers Insurance in Florida, which caused additional interstate communications concerning the claim that traveled in interstate commerce, including to Connecticut and Wisconsin, reporting the fire at the commercial structure located at 234 S. Haven Street.

18 U.S.C. § 1343
18 U.S.C. § 2

## **FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further charges that:

1. The allegations contained in Count Four of the Indictment are realleged and incorporated here for the purpose of alleging forfeiture.

2. Pursuant to Rule 32.2, Fed. R. Crim. P., 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461, notice is hereby given to **STAVRAKIS** that the United States will seek forfeiture as part of any sentence upon conviction of an offense in violation of 18 U.S.C. § 1343, of all property, real and personal, which constitutes and is derived from proceeds traceable to the scheme to defraud.

3. The property to be forfeited includes, but is not limited to, the following:

   a. A sum of money equal to the value of the proceeds of the scheme to defraud, which amount is approximately $15,081,435.55; and
   b. The merchandise fraudulently obtained during the course of the scheme detailed above.

4. If any of the property described above, as a result of any act or omission of the above-listed defendants:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
21 U.S.C. § 853(p)

_Robert K. Hur_ by (Jim)
ROBERT K. HUR
UNITED STATES ATTORNEY

A TRUE BILL:

**SIGNATURE REDACTED**

3/28/19
Date