# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIM. NO. ELH 19 0160 |
| DIMITRIOS STAVRAKIS, | * |
| Defendant. | * |

********

## GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT
## INTRINSIC EVIDENCE ALTERNATIVELY AS 404(b) EVIDENCE

The United States of America hereby moves *in limine* to admit evidence intrinsic to the charges, or, in the alternative, pursuant to Rule 404(b) of the Federal Rules of Evidence.

I. <u>Offer of Proof</u>.

   A.    Background

On July 29, 2015, at approximately 1:33 a.m., a fire was reported at 234 S. Haven Street, Baltimore. Adcor Industries, Inc.,[1] ("Adcor") the business located there, is a manufacturing shop owned by the Defendant, Dimitrios Stavrakis. Baltimore City Firefighters responded and extinguished the blaze. The fire had started and remained contained in a small office space on the floor of a large warehouse. The small office, known as the "DNC Hut," was destroyed, and the fire extended through the roof of the DNC Hut. In the middle of the floor of the DNC Hut, a 5-gallon metal drum was located.

The 5-gallon metal drum was quickly confirmed to contain methanol, a flammable liquid. The methanol drum, which was stored in another part of the building, was used by an Adcor employee to clean a part for an Adcor customer.

---

[1] The location also housed Adcor Beverage, LLC, and was associated with other LLC's owned/created by the Defendant.



The DNC Hut

The 5 gallon can of METHANOL

The Adcor night crew left the building secured and unoccupied on July 28, 2015, arming the security system as they left the building at 11:16 p.m. (see line 22 in the table, infra). Records from the alarm system show that the alarm for "Partition One," the office area, was disarmed at 12:25 a.m. on July 29, 2018 (see line 20). At 12:33 a.m., Partition 2 was disarmed (line 18). The fire was reported an hour later when a citizen observed smoke coming from the building.

| 18 | 7/29/15 12:33 AM | DISARMED BY USER | | 3 | 2 |
| 19 | 7/29/15 12:25 AM | DISARMED BY USER | | 3 | 3 |
| 20 | 7/29/15 12:25 AM | DISARMED BY USER | | 3 | 1 |
| 21 | 7/28/15 11:16 PM | ARMED BY USER | | 3 | 3 |
| 22 | 7/28/15 11:16 PM | ARMED BY USER | | 3 | 2 |

Origin and cause analysis for the fire was conducted by the Baltimore City Fire Department's Fire Investigation Bureau and a certified fire investigator hired by Travelers Insurance. Travelers Insurance also contracted an electrical engineer. After examining the scene, accidental causes for the fire, including an electrical cause, as well as natural causes, were eliminated as a cause for the fire. An irregular fire pattern was observed on the floor of the DNC Hut consistent with an accelerant being poured on the

2

floor. Forensic chemists from the Baltimore Police Department and Travelers confirmed the presence of an ignitable liquid ("an accelerant") from samples collected from the fire debris. Both fire investigators determined that the fire was incendiary, that is, intentionally set in a place where fire should not be.

After entering, and disarming the alarm (see # 1 below), the person who entered made their way around the machines on the shop floor of the darkened warehouse, disarmed the shop floor area, which is "Partition 2," at 12:33 a.m. (#2), proceeded to the "Beverage Shipping" area where the Methanol was stored (#3), and then to the DNC Hut to start the fire (#4).



The evidence suggests that the person who set the fire (1) had a key to the front

door; (2) knew the alarm code; and (3) was familiar with the layout and contents of the building.

The Defendant owned Adcor since approximately 1991. Review of financial records revealed that by 2010, Adcor's business experienced a down turn due to the loss of a contract with Colt Industries, a trend which only worsened over time. From 2011 into 2015, the defendant's businesses defaulted on various loans, struggled to pay suppliers resulting in legal action, and sold off profitable divisions of the business to satisfy defaulted loans. In 2014 Adcor incurred an operating loss of $2,053,427 and its liabilities exceeded its assets by $898,743. Additionally, during 2014 the Defendant liquidated personal assets and injected the proceeds into Adcor to utilize as working capital. Adcor hired a public accounting firm to compile and review their financial statements and perform a review of Adcor's financial condition. In their report to the Defendant in 2015, the firm stated:

> As of December 31, 2014, the balance of cash and cash equivalents is inadequate to fund operations through December 31, 2015. These factors raise concerns about the Company's ability to continue as a going concern.

More losses followed, and at the time of the fire in July 2015, Adcor was again in default on a line of credit, and their monthly operating losses put them on a pace to lose approximately $2,900,000 for the year. Essentially, Adcor was facing insolvency.

Shortly after being notified of the fire, the Defendant retained Goodman-Gable-Gould, Adjusters International to assist with filing claims for the damage cause by the fire with Travelers Insurance who held the insurance policies for both Adcor Industries, Inc. and Adcor Beverage, LLC. Initial notification was sent to Travelers' call center in Florida, and communications regarding the claims that followed traveled to Travelers' servers handling email traffic, which are in Georgia and Nebraska. Payments in the form

of large advances followed shortly thereafter, and continued until August of 2016, when a release was signed, Travelers made a final payment, and the claim was closed. Ultimately, Travelers paid over $15 million on the claims.

Much of the proceeds were used to replace a number of machines that had been in service for decades with new state of the art machines valued at over $3 million. The Defendant used some of the insurance proceeds to pay off the private loans he had procured prior to the fire, and also paid other outstanding debts. The Defendant also spent approximately $98,000 on a Mercedes-Benz, $25,500 on a Harley-Davidson motorcycle, and $15,000 on a Rolex watch.

  B.  Offer Proof

  1.  On or about February 18, 2003, the roof of the Adcor building located at 234 S. Haven Street, collapsed under the weight of accumulated snow. The property was insured by the Hartford Insurance Company ("Hartford Insurance"). The loss claimed by Adcor was over $12 million. After litigation, Hartford Insurance paid approximately $7 million on this claim.

  2.  On or about May 9, 2007, there was a fire at a building located at 910 S. Grundy Street, Baltimore, Maryland, owned and used by Adcor to store product and equipment. The property was insured by Berkley Mid-Atlantic Group, Fireman's Insurance Company of Washington, DC ("Fireman's Insurance"). Adcor retained Goodman-Gable-Gould Insurance Adjusters to assist in compiling and submitted a claim to Fireman's Insurance. Fireman's Insurance paid approximately $10.8 million on the claim. Adcor did not use the proceeds to rebuild the property at 910 S. Grundy Street; rather, Adcor used the proceeds to purchase equipment and make capital improvements at 234 S. Haven Street. In November of 2007, two Makino A61 machines were purchased

5

for $283,065 each. And in December of 2008, two more Makino A61 machines were purchased for $295,744.26 each.

II.  Legal Analysis.

  A.  Intrinsic evidence.

The Government asserts that the fact and circumstances of (1) and (2) outlined above are intrinsic evidence to the Defendant's fraud scheme.

Evidence of uncharged conduct is intrinsic if it "arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial." *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (internal alterations and quotation marks omitted). Additionally, "acts are intrinsic when they are inextricably intertwined" with the charged conduct. *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (internal quotation marks omitted).

"When other crimes, wrongs, or acts evidence is relevant to establishing an element of the offense Rule 404(b) is not even implicated." *United States v. Grimmond*, 137 F.3d 823, 832 (4th Cir. 1998); *see United States v. Dozie*, 27 F.3d 95, 97 (4th Cir. 1994) (per curiam) (holding Rule 404(b) did not apply to allegations of insurance fraud that occurred within the same time frame as the charged conspiracy to commit mail fraud). And when the charged conduct involves a fraud scheme "where the defendant's criminal intent is placed at issue" this Court's case law makes clear that intrinsic evidence includes conduct beyond the scope of the indictment that is relevant to demonstrating a defendant's knowing and willful conduct. *United States v. Bajoghli*, 785 F.3d 957, 963 (4th Cir. 2015) (holding a district court abused its discretion when it limited the government's evidence "to that which is directly relevant" to the counts charged in the indictment); *see United States v. Pless*, 79 F.3d 1217, 1220 (D.C. Cir. 1996).

As the Fourth Circuit has repeatedly held, "Evidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or ... is necessary to complete the story of the crime on trial." *United States v. Basham*, 561 F.3d 302, 326 (4th Cir.2009) (internal quotation marks omitted). Such intrinsic evidence is "inextricably intertwined" with evidence of the charged offenses and forms an integral part of the testimony concerning them. *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir.2010) (internal quotation marks omitted).

Here, the items outlined supra are inextricably intertwined with the offenses charged, and are necessary to complete the story of the crime on trial. See *United States v. Bajoghli*, 785 F.3d 957, 964 (4th Cir.2015) (in the context of fraud, government required to prove fraud scheme and execution of scheme to defraud, which allows for more expansive introduction of conduct even when it is not substantively charged in the indictment); *United States v. Dozie*, 27 F.3d 95, 97 (4th Cir.1994) (per curiam) (holding that Rule 404(b) did not apply to allegations of insurance fraud that occurred within the same time frame as the charged conspiracy to commit mail fraud).

From 2012 until the time of the fire in 2015, Adcor's financial situation grew increasingly dire. The Defendant needed multiple infusions of cash, but he found it increasingly difficult to procure loans from financial institutions. The solution which naturally occurred to the Defendant due to his prior insurance claims was to start a fire, then file a claim for damages with the insurance company. As the Defendant learned from his prior insurance claims, the money paid by the insurance company for the damage did not have to be used to rebuild/repair the business to its condition prior to the damage, but instead could be used to pay down debt, and on other personal items. The

infusion of capital could also be used to purchase new machines and update the facility. And, as the Defendant knew from past experience, retaining Goodman-Gable-Gould Insurance Adjusters would assist him with the claim process and ensure he received money quickly. The evidence of the prior insurance claims is intrinsic and should be admitted on the Government's direct case.

Regarding application of Rule 403, evidence found to be relevant and probative as intrinsic should be excluded under Fed. R. Evid. 403 only in those instances where the trial judge believes there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the proffered evidence. *Morgan v. Foretich*, 846 F.2d 941, 945 (4th Cir. 1988).

It is also clear under Fourth Circuit case law that the admission of evidence does not result in unfair prejudice under Fed. R. Evid. 403 where it does not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged. *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995). See also *United State v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

Here, the prior claims are relevant, including the processing of the claims, payment on same, and use of the money derived therefrom. Since the damage that caused the prior claims was not determined to have been the result of intentional misconduct, the claims are not more sensational or disturbing than the allegations contained in the Indictment. The evidence is intrinsic and should be admitted.

C.  Rule 404(b).

Alternatively, the Government moves for the admission of items (1) through (3) supra pursuant to Fed.R.Evid. 404(b)(2). That Rule provides:

8

> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed.R.Evid. 404(b)(2).

Fed. R. Evid. 404(b) permits the admission of extrinsic acts where they are (1) relevant to an issue other than character, (2) necessary, and (3) reliable. *United States v. Mark*, 943 F.2d 444, 447 (4th Cir. 1991) (quoting *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988)). The Fourth Circuit has long held that Fed. R. Evid. 404(b) is an inclusionary rule which permits the admission of all evidence of other crimes relevant to an issue in a trial, except that which tends to prove only criminal disposition. *United States v. Sanchez*, 118 F.3d 192, 195 (4th Cir. 1997); *United States v. McMillon*, 14 F.3d 948, 953 (4th Cir. 1994); *United States v. Bailey*, 990 F.2d 119, 121 (4th Cir. 1992); *Mark*, 943 F.2d at 447; *United States v. Watford*, 894 F.2d 665, 671 (4th Cir. 1990); *United States v. Masters*, 622 F.2d 83, 85 & n.2 (4th Cir. 1980). The trial court has broad discretion with respect to the admission of extrinsic act evidence, and the Court of Appeals will defer to the lower court's decision "unless it is an arbitrary or irrational exercise of discretion." *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986).

The Fourth Circuit has established a three-part test to determine whether extrinsic act evidence is admissible under Fed. R. Evid. 404(b). The evidence is admissible if the court finds that (1) the evidence is relevant to some issue other than character; (2) it is necessary; and (3) it is reliable. *United States v. Queen*, 132 F.3d 991 (1997); *Rawle*, 845 F.2d at1247; *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir. 1982). Once the threshold requirements of Fed. R. Evid. 404(b) are met, the court must then consider whether the probative value of the evidence is outweighed by the potential for unfair

prejudice under Fed. R. Evid. 403.  *Mark*, 943 F.2d at 448; *Masters*, 622 F.2d at 87.

    1.  <u>The evidence is relevant</u>.

Here, the proffered evidence meets all three parts of the Fourth Circuit's test for admissibility under Fed. R. Evid. 404(b). The evidence is probative to prove knowledge, intent, motive, and identity, as well as to prove lack of mistake/accident.

Generally, a defendant's not guilty plea puts intent at issue. See generally *Sparks v. Gilley Trucking Co., Inc.*, 992 F.2d 50, 52 (4th Cir.1993) (stating that when intent to a crime is at issue, this court regularly permits admission of prior acts to prove that element)." Admitting evidence regarding the proffered items is even more critical given the need to prove knowledge, intent, motive, and identity, as well as to prove lack of mistake/accident, which are the likely defenses in this case.  Most people who have filed routine insurance claims, such as an automobile claim, likely believe that insurance companies will only make payments directly to repair facilities and contractors.  Through the prior claims, the defendant learned that much of the insurance proceeds would be provided directly to him, with no restriction on how the monies are spent.  This evidence bears directly on the defendant's knowledge, motive, intent, and identity.

    2.  <u>The evidence is necessary</u>.

The element of necessity is likewise met here. Evidence is necessary and admissible where it supplies useful proof of the elements of knowledge and intent. The Defendant will most assuredly pursue a defense that puts his knowledge, intent, and motive at issue. The government accordingly should be permitted to introduce all relevant evidence on the issue of intent, knowledge, motive, modus operandi, and lack of mistake/accident. See, *United States v. Byers*, 649 F.3d 197, 206 (4th Cir. 2011) (cross-examination of government witnesses created a significant credibility issue which made

the 404(b) evidence necessary).

        3. <u>The evidence is reliable</u>.

Finally, the proffered evidence here satisfies the element of reliability. The documents in question were provided by the insurance companies that handled those claims, Hartford Insurance and Berkley Mid-Atlantic, and as to the 2007 fire, were also confirmed by Goodman-Gable-Gould Insurance Adjusters; the reliability of the records will be established by a preponderance of the evidence. See *Huddleston v. United States*, 485 U.S. 681 (1988) (standard of proof for prior acts under Rule 404(b) is preponderance of the evidence).

For all of these reasons, the extrinsic act evidence proffered above meets the requirements for admissibility under Fed. R. Evid. 404(b).

        4. <u>The evidence is not unduly prejudicial</u>.

Once evidence of extrinsic acts is found to be admissible under Fed. R. Evid. 404(b), the court must still consider Rule 403 which states that relevant evidence may be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403; *Morgan v. Foretich*, 846 F.2d 941, 944 (4th Cir. 1988). Evidence found to be relevant and probative under Fed. R. Evid. 404(b) should be excluded under Fed. R. Evid. 403 only in those instances where the trial judge believes there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the proffered evidence. *Id*. at 945; see also *United States v. Powers*, 59 F.3d 1460 (4th Cir. 1995) (evidence that defendant repeatedly raped his daughter was not unduly prejudicial and hence was admissible under Rule 404(b) in prosecution for aggravated sexual abuse of a minor -- evidence was highly probative and judge gave limiting instruction thereby

obviating potential for prejudice); *Masters*, 622 F.2d at 87.

In *United States v. Barrie*, 629 F. App'x 541, 543–44 (4th Cir. 2015), cert. denied, 136 S. Ct. 1691, 194 L. Ed. 2d 792 (2016), the defendant was charged with Wire Fraud and Aggravated Identity Theft and had a prior offense of Conspiracy to Commit Wire and Mail Fraud, which the trial court ruled was admissible under FRE 404(b), which the Fourth Circuit found was not an abuse of the trial court's wide discretion. If a prior conviction for the same crime under consideration was not barred by Rule 403, then the evidence proffered here, which is not criminal, must pass Rule 403 muster as not being unduly prejudicial.

It is also clear under Fourth Circuit case law that the admission of extrinsic act evidence does not result in unfair prejudice under Fed. R. Evid. 403 where it does not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged. *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995). See also *United State v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

Here, the extrinsic act evidence involves prior insurance claims, including the process of adjudicating said claims, and payment of money for same. It is inconceivable that this additional evidence would evoke such an emotional reaction against the defendant that the jury would be excited to irrational behavior. *Mark*, 943 F.2d at 449 n.1; *United States v. Teague*, 737 F.2d 378, 381 (4th Cir.1984).

Moreover, a curative instruction, potentially given both at the time the evidence is introduced and at the end of the case, will ensure that the evidence is not misused by the jury and will decrease potential prejudice.

## CONCLUSION

The government submits that the items summarized above should be admitted on the Government's case in chief. The evidence is intrinsic to the charges under consideration.

Alternatively, the evidence is both relevant and admissible under both Fed. R. Evid. 404(b) and Fed. R. Evid. 403. In the event the Court admits the offense conduct pursuant to FRE 404(b), the Government would request that the Court give the jury a cautionary instruction concerning the permissible uses of extrinsic act evidence, both when the evidence is admitted and then again at the close of the case. See *Powers*, 59 F.3d at 1467 ("as to prejudicial effect, cautionary or limiting instructions generally obviate any such prejudice").

Respectfully submitted,

Robert K. Hur
United States Attorney

/ss/
By:_____
Judson T. Mihok
Paul E. Budlow
Assistant United States Attorneys
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800