RRH
6/6/19

JTM/PEB: USAO# 2015R00566



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. ELH 19 0160 |
| | * | |
| v. | * | (Use of Fire To Commit a Federal |
| | * | Felony, 18 U.S.C. § 844(h)(1); Wire |
| DEMETRIOS STAVRAKIS, | * | Fraud, 18 U.S.C. § 1343; Malicious |
| a/k/a "Dimitrios Stavrakis," | * | Destruction of Property by Fire, 18 |
| a/k/a "Jimmy," | * | U.S.C. § 844(i); Aiding and Abetting, 18 |
| | * | U.S.C. § 2; Forfeiture, 18 U.S.C. § |
| Defendant | * | 981(a)(1)(C), 21 U.S.C. § 853, 28 U.S.C. § |
| | * | 2461(c)) |
| | * | |

*******

## SECOND SUPERSEDING INDICTMENT

### COUNT ONE
(Using Fire to Commit a Federal Felony)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Superseding Indictment:

### Introduction

1. Defendant **DEMETRIOS STAVRAKIS, a/k/a "Dimitrios Stavrakis," a/k/a "Jimmy,"** (hereinafter "**STAVRAKIS**") born 1965, was a resident of Lutherville-Timonium, Maryland.

2. Unless otherwise specified, the entities described in Paragraphs 3 through 7 are related through **STAVRAKIS** and are collectively referred to herein as "ADCOR."

3. **STAVRAKIS** was the president of ADCOR Industries, Inc., ("ADCOR Industries) a precision machine part manufacturer operating out of a building located at 234 S. Haven Street, Baltimore, Maryland (hereinafter "234 S. Haven Street").

4. **STAVRAKIS** had a 50% ownership interest in ADCOR Packaging, LLC,

("ADCOR Packaging), a company that manufactured parts and assembled machines that bottled beverages. ADCOR Packaging also operated out of the building located at 234 S. Haven Street.

5. T.J. Enterprises, LLC, a real estate holding company owned by **STAVRAKIS**, owned the property located at 234 S. Haven Street.

6. ADCOR Industries created ADCOR Defense in 2009 to market firearms, after obtaining a Federal Firearms License (FFL) through the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). ADCOR Industries produced upper receivers for Colt Industries and patented an M-4 style rifle, developed in 2008, and marketed by ADCOR Defense.

7. **STAVRAKIS** created and owned ADCOR Services, LLC, for labor services and payroll payments.

8. By manufacturing parts for customers in the beverage, aerospace, firearms, and defense industries, ADCOR used the property at 234 S. Haven Street in interstate commerce and in activities affecting interstate commerce.

9. Goodman-Gable-Gould/Adjusters International ("GGG") is a public adjuster firm hired by insurance policyholders to assist with the process of submitting an insurance claim and expediting the receipt of insurance proceeds after a loss.

**Financial Condition of ADCOR Prior to the Fire**

10. From 2010 through 2014, ADCOR Industries posted operating losses in their respective end of year financial statements ranging from $499,014 to $3,753,709.

11. In 2012, ADCOR Industries incurred an operating loss of $1,847,407. To offset these losses, **STAVRAKIS** entered into a personal loan agreement to borrow $5,000,000 in 2012. Proceeds from this personal loan were used in part to repay other loan obligations and increase working capital.

12. In 2013, ADCOR Industries incurred an operating loss of $1,518,969. In order to meet growing debt obligations under a loan forbearance agreement with M&T Bank, ADCOR sold assets, to include its Beverage Division to ADCOR Packaging Group in order to eliminate intercompany payables due to ADCOR Packaging Group. Sales of these assets generated $2,591,184. As a result, in 2013, ADCOR Industries reflected net income of $952,834.

13. In 2013, an independent accounting firm reviewed ADCOR's financial statements and concluded that, "[a]s of December 31, 2013, the balance of cash and cash equivalents is inadequate to fund operations through December 31, 2014. These factors raise concerns about ADCOR's ability to continue as a going concern." The statement was intended to advise ownership and to warn potential investors that ADCOR Industries was at risk of becoming insolvent.

14. In 2014, ADCOR sold its Beverage Division to an outside competitor for more than $9 million. **STAVRAKIS'S** portion of the proceeds of this sale were used, in part, to repay loans, and inject working capital into the remaining ADCOR businesses.

15. In 2014, the same independent accounting firm (supra ¶ 13) reviewed ADCOR's financial statements and concluded that, "As of December 31, 2014, the balance of cash and cash equivalents is inadequate to fund operations through December 31, 2015. These factors raise concern about the company's ability to continue as a going concern." Again, this statement was intended to advise ownership and warn potential investors that ADCOR Industries remained at risk of insolvency.

16. In 2012 and 2015, ADCOR defaulted on loans, and as a result, entered into forbearance agreements with a succession of lenders, first M&T Bank, then Joco Financial Group, LLC, then 1st Mariner Bank, and then Bank of America.

17. From 2012 through July of 2015, ADCOR failed to timely pay suppliers including Alpha Grainger, FN Manufacturing, LLC, Hadco Metal Trading Co., LLC, and Admiral Metals. Suppliers sent some of the past due balances owed by ADCOR to collection.

18. On or about June 25, 2015, ADCOR filed a complaint against Beretta U.S.A. Corporation alleging multiple civil claims, including breach of contract, in Baltimore County Circuit Court.

19. As of July 2015, several of the machines at ADCOR had been in use for over thirty years, including two LaBlond Makino MC-65 Machines, two LaBlond Makino FMC 106/A30 Machines, and one Matsuura MC 500V2 Machine. As of July 2015, at least two machines at ADCOR were not in working order. In addition, the four Makino machines put into service in late 2007 were depreciated on an accelerated basis for tax purposes and were either fully depreciated or nearly fully depreciated by July 2015. For example, the Makino machines placed into service in late 2007 were reported at 10-year straight-line depreciation; as a result, as of July 2015, these machines were 75% depreciated for financial statement purposes.

20. From January 2015 through July 2015, ADCOR Industries posted net monthly losses. The cumulative loss for ADCOR Industries from January 1, 2015 through June 30, 2015, was $779,171.71. In this same timeframe, cumulative net operating losses were $241,809.66.

## The Victim Insurance Company and Policies

21. Travelers Indemnity Company of America (hereinafter "Travelers") was an insurance company headquartered in Connecticut authorized to transact business in Maryland. Travelers' data centers, including the servers for Travelers' email, were located in Georgia and Nebraska.

22. Travelers issued a commercial property insurance policy to ADCOR Industries (hereinafter "ADCOR Industries policy"), effective through July 1, 2016. The coverage limits of the policy were $4,291,000 for the building, $12,825,000 for business personal property, and $5,050,100 for business income.

23. ADCOR Packaging had a commercial property insurance policy from Travelers Insurance (hereinafter "ADCOR Packaging policy"), effective through July 1, 2016. The coverage limits of the policy were $1,000,000 for contents, and $300,000 for business income and expenses.

24. Travelers' insurance policies excluded coverage for "Intentional Loss" defined as, "Any act an insured commits or conspires to commit with the intent to cause a loss. In the event of such loss, no insured is entitled to coverage, included insureds who did not commit or conspire to commit the act causing the loss."

25. Travelers' insurance policies excluded coverage for "Dishonesty or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone with whom you entrust the property for any purpose: (1) Acting alone or in collusion with others; or (2) Whether or not occurring during the hours of employment."

26. Travelers' insurance policies excluded coverage for "Concealment, Misrepresentation or Fraud" by voiding the policy "in any case of fraud" or if "you or any other insured, at any time, intentionally conceal or misrepresent a material fact" concerning coverage, the property, the insured's interest in the property, or any claim for coverage.

## The Fire

27. On or about July 28, 2015, at approximately 5:52:12 p.m. and 5:53:52 p.m.,

**STAVRAKIS** utilized tape in an effort to defeat one of the security features on the front door for the purpose of having a fire set therein.

28. On or about July 29, 2015, between approximately 12:25 a.m. and 1:30 a.m., the ADCOR building located at 234 S. Haven Street was set on fire by use of a flammable liquid known as Methanol, a solvent used as a cleaning agent. The fire originated in a small self-contained office area of the shop floor known as the "DNC Hut." The fire destroyed the DNC Hut, its contents, and damaged a portion of the ceiling directly above the DNC Hut.

### The Charge

29. Beginning at a time unknown to the Grand Jury, but no later than on or about July 28, 2015, and continuing until on or about August 5, 2016, the defendant,

**DEMETRIOS STAVRAKIS,**
**a/k/a Dimitrios Stavrakis,**
**a/k/a "Jimmy,"**

knowingly used fire to commit a felony prosecutable in a court of the United States; to wit: wire fraud in violation of Title 18, United States Code, Section 1343, as charged in Counts Two and Three of this Second Superseding Indictment and incorporated here.

18 U.S.C. § 844(h)(1)
18 U.S.C. § 2

## COUNT TWO
### (Wire Fraud)

1. The allegations contained in Paragraphs 1 through 28 of Count One are incorporated by reference here.

### The Scheme and Artifice to Defraud

2. Beginning at a time unknown to the Grand Jury, but at least as of on or about July 28, 2015, and continuing through August 5, 2016, the defendant,

**DEMETRIOS STAVRAKIS,**
a/k/a **Dimitrios Stavrakis,**
a/k/a **"Jimmy,"**

devised and intended to devise a scheme and artifice to defraud Travelers Insurance Company, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises from Travelers Insurance Company.

### Object of the Scheme and Artifice to Defraud

3. It was the object of the scheme and artifice to defraud to unlawfully obtain insurance proceeds from Travelers under the ADCOR Industries policy by using fire to damage or destroy the commercial property at 234 S. Haven Street.

### Manner and Means of the Scheme and Artifice to Defraud

4. It was part of the scheme and artifice to defraud that **STAVRAKIS** intended to cause damage to the commercial property at 234 S. Haven Street.

5. It was further part of the scheme and artifice to defraud that **STAVRAKIS** caused notification to be made to Travelers that was false, fraudulent, and omitted material facts regarding the fire at 234 S. Haven Street.

6. It was further part of the scheme and artifice to defraud that **STAVRAKIS** caused claims to be made to Travelers for insurance proceeds for loss caused by a fire that he

intentionally set or aided and abetted one or more person unknown to intentionally set.

7. It was part of the scheme and artifice to defraud that **STAVRAKIS** sought to obtain insurance proceeds from the fire at 234 S. Haven Street.

8. It was further part of the scheme and artifice to defraud that **STAVRAKIS** made false and fraudulent statements and omitted material facts to GGG, knowing GGG would file a claim with Travelers.

9. It was further part of the scheme and artifice to defraud that **STAVRAKIS** used and caused to be used interstate wires in order to communicate with Travelers.

### Acts in Furtherance of the Scheme and Artifice to Defraud

10. On or about July 29, 2015, **STAVRAKIS** called GGG to notify them of the fire, and to request that GGG assist in the claims process with Travelers. GGG, in turn, notified Travelers of the fire.

11. On various dates between July 29, 2015 and August 5, 2016, GGG, acting on behalf of **STAVRAKIS,** ADCOR Industries, and ADCOR Packing, submitted false and fraudulent claims for insurance proceeds to Travelers in a collective amount of over $21 million.

12. On various dates between July 29, 2015, and August 5, 2016, **STAVRAKIS** caused Travelers to pay the claims submitted by GGG on behalf of **STAVRAKIS**, ADCOR Industries, and ADCOR Packaging, and Travelers did so by mailing checks payable to ADCOR Industries and ADCOR Packaging, and communications regarding same caused wires to travel in interstate commerce. Travelers paid approximately $14,721,071.55 total on the claims submitted under the ADCOR Industries Policy, and approximately $360,364 total on the claims submitted under the ADCOR Packaging Policy.

13. The money paid on the insurance claims was used by ADCOR to cover a variety

of business-related expenses, including, but not limited to, the following (in approximate amounts), less the $50,000 deductible:

    a. $10,005,585.09 used to restore existing machines and equipment, and to purchase new machines and equipment, including five machining centers;

    b. $917,729.75 in non-machinery business personal property;

    c. $1,665,774.28 in cleaning and repairs, including $216,237.21 in electrical repairs;

    d. $614,532.18 in building restoration; and

    e. $60,180 business income and extra expenses.

14. In addition, **STAVRAKIS** used insurance proceeds to pay personal expenses. ADCOR transferred $600,000 to the PNC account ending 3156 in the name of **STAVRAKIS'S** wife, after which regular monthly payments of approximately $6,000 followed. **STAVRAKIS** purchased the following luxury items: (1) a 2016 vehicle at the approximate cost of $98,499.20; (2) a 2016 motorcycle at the approximate cost of $25,500; and (3) a watch at the approximate cost of $14,787.

### The Charge

15. On or about July 29, 2015, in the District of Maryland and elsewhere, the defendant,

**DEMETRIOS STAVRAKIS,**
**a/k/a "Jimmy,"**
**a/k/a Dimitrios Stavrakis,**

for the purpose of executing the scheme and artifice to defraud described above, and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce the following signals and sounds; to wit, a telephone call from Maryland reporting the fire at the commercial structure located at 234 S. Haven Street to the claims center for Travelers

Insurance in Florida, which caused additional interstate communications concerning the claim that traveled in interstate commerce, including to Georgia, Nebraska, and Connecticut.

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT THREE
### (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. The allegations contained in Paragraphs 1 through 26 of Count One and Paragraphs 8, 9, 10, 12, and 13 of Count Two are incorporated by reference here.

### The Scheme and Artifice to Defraud

2. From on or about July 29, 2015, and continuing until on or about August 5, 2016, the defendant,

**DEMETRIOS STAVRAKIS,**
**a/k/a Dimitrios Stavrakis,**
**a/k/a "Jimmy,"**

devised and intended to devise a scheme and artifice to defraud Travelers Insurance Company, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises from Travelers Insurance Company.

### Object of the Scheme and Artifice to Defraud

3. It was the object of the scheme and artifice to defraud to cause Travelers to pay inflated and excessive insurance proceeds under the ADCOR Industries policy to which ADCOR was not entitled and from which **STAVRAKIS** unlawfully benefitted.

### Manner and Means of the Scheme and Artifice to Defraud

4. It was part of the scheme and artifice to defraud that **STAVRAKIS** sought to unlawfully obtain insurance proceeds, and unlawfully increase the amount of insurance proceeds received following the fire at 234 S. Haven Street.

5. It was further part of the scheme and artifice to defraud that **STAVRAKIS** made false and fraudulent statements and omitted material facts to GGG, knowing GGG would file a claim seeking payments to cover costs with Travelers based on those misrepresentations.

11

6. It was further part of the scheme and artifice to defraud that **STAVRAKIS** made false and fraudulent statements and omitted material facts to Travelers for the purpose of obtaining and unlawfully benefitting from insurance proceeds.

7. It was further part of the scheme and artifice to defraud that **STAVRAKIS** used and caused to be used interstate wires in order to receive payment from and communicate with Travelers.

### Acts in Furtherance of the Scheme and Artifice to Defraud

8. On or about October 22, 2015, **STAVRAKIS** caused GGG to send emails to Travelers, falsely representing information about the alarm and security camera system at 234 S. Haven Street, including that the system was damaged and needed to be repaired at a cost of approximately $30,000.

### The Charge

9. On or about October 22, 2015, in the District of Maryland and elsewhere, the defendant,

**DEMETRIOS STAVRAKIS,**
a/k/a **Dimitrios Stavrakis,**
a/k/a **"Jimmy,"**

for the purpose of executing the scheme described above, and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce the following signals and sounds, that is, an email sent from GGG to Travelers, which traveled to Travelers' servers in Georgia and Nebraska.

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT FOUR
### (Malicious Destruction of Real Property by Fire)

The Grand Jury for the District of Maryland further charges that:

1. The allegations contained in Paragraphs 1 through 28 of Count One are incorporated here.

2. Beginning at a time unknown but not later than July 28, 2015, and continuing until on or about August 5, 2016, the defendant,

**DEMETRIOS STAVRAKIS,**
**a/k/a Dimitrios Stavrakis,**
**a/k/a "Jimmy,"**

aided and abetted the malicious damage and destruction, by means of fire, of any building and other real and personal property used in interstate commerce and in activities affecting interstate commerce, to wit: the ADCOR building located at 234 S. Haven Street.

18 U.S.C. § 844(i)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further charges that:

1. The allegations contained in Counts Two and Three of the Second Superseding Indictment are realleged and incorporated here for the purpose of alleging forfeiture.

2. Pursuant to Rule 32.2, Fed. R. Crim. P., 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461, notice is hereby given to **STAVRAKIS** that the United States will seek forfeiture as part of any sentence upon conviction of an offense in violation of 18 U.S.C. § 1343, of all property, real and personal, which constitutes and is derived from proceeds traceable to the scheme and artifice to defraud.

3. The property to be forfeited includes, but is not limited to, the following:

    a. A sum of money equal to the value of the proceeds of the scheme and artifice to defraud, which amount is approximately $15,081,435.55; and
    b. The merchandise fraudulently obtained during the course of the scheme detailed above.

4. If any of the property described above, as a result of any act or omission of the above-listed defendants:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
21 U.S.C. § 853(p)

14

*Robert K. Hur by JTM*
ROBERT K. HUR
UNITED STATES ATTORNEY

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

6/6/19

Date