

G. Adam Ruther
**Partner**
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
P: (410) 727-6600/F: (410) 727-1115
aruther@rosenbergmartin.com

September 9, 2019

The Honorable Ellen L. Hollander
United States District Court
for the District of Maryland
101 West Lombard Street
Chambers 5B
Baltimore, Maryland  21201

    Re:    *United States v. Demetrios Stavrakis, Case No. 1:19-CR-00160*
            *Defense Objection to Government Exhibits*

Dear Judge Hollander:

    The defense writes to present its arguments in opposition to the government's arguments stated in its letter to the Court of September 8, 2019 (ECF 144) concerning the defense's objections to two categories of exhibits that the government intends to introduce in its case in chief.

1. **The Defense Objects To The Government's Evidence Of Adcor's Financial Hardships That No Longer Existed At The Time Of The Fire, As They Are Irrelevant To The Issue Of Motive.**

    The defense objects to the government's proposed use of evidence relating to the financial condition of Adcor months and years prior to the alleged commission of the crimes charged. Contrary to the government's arguments, this evidence is not relevant to motive, because of its remoteness in time and the fact that most of the specific financial pressures on Adcor in prior years had been relieved by July of 2015. The government argues that Adcor's financial performance as far back as 2010 is relevant to whether Mr. Stavrakis had a motive to commit these crimes in 2015. But as a matter of logic, the relevant time period for motive has to be when the accused is alleged to have actually committed the crime charged, not years earlier. The debts and hardships that Adcor faced in 2010 through 2014 that were no longer looming at the time of the fire could not logically be part of the motive for Mr. Stavrakis to commit these crimes in July of 2015. In other words, the relevant question is not how hard things had been financially in the prior 5 years, but how hard things were *at the time of the fire*, when Mr. Stavrakis would have made the decision to commit arson in order to alleviate the then-existing financial pressure.

    The evidence will show that most of the debts that Adcor and Mr. Stavrakis carried between 2010 and mid-2015 had been paid off or at least re-financed by July of 2015. The picture of financial hardship from 2010 to 2014 that the government seeks to present is likely to confuse the jurors and reduce the likelihood that they will correctly seize upon what is the truly relevant timeframe for motive – immediately before the crime itself. By way of analogy, suppose the

government charged a husband with murdering his wife to collect insurance proceeds, motivated by the need for money. In that case, the fact that years earlier the defendant had owed significant debts that he had paid off before his wife's death would surely not be admissible as evidence of motive. What would be admissible would be the defendant's need for money at the time of his wife's death.

The government cites the unreported opinion in *United States v. Pineda*, 91 F.3d 136, 1996 WL 379799 (4th Cir. 1996) for the proposition that evidence of prior financial hardship, even if it was resolved at the time of the crime, is admissible to show financial motive. But the important distinction between *Pineda* and this case is that the evidence in *Pineda* showed that the defendant had only recovered from her prior financial hardship through the commission of an early fraud. This showed that "Pineda was desperate enough to procure fraudulent loans in order to stave off the foreclosures until she could burn her business, obtain the insurance proceeds, and pay back the loans. In addition, the evidence makes clear that Pineda's financial situation was so serious that she could not have saved her property through legal means." *Id.* at 2. By contrast, here the evidence shows that Mr. Stavrakis was succeeding in maintaining the viability of his business through *legal* means. Therefore, the inference of "desperation" that was obvious in *Pineda* cannot be drawn from the evidence that the government seeks to introduce against Mr. Stavrakis.

Additionally, carrying the government's argument for the relevance of this evidence to provide "context" to the crime charged to its logical extreme, almost any prior financial hardship would be admissible to prove financial motive, no matter how remote that hardship was to the time that the accused formed the intent to commit the crime. This theory of motive evidence by way of "context" is not in keeping with Rules of Evidence 401 or 403. It does not tend to make any material fact in the case more or less likely, and it is certainly far more likely to confuse the jury and unfairly prejudice the defendant than it is likely to provide properly relevant evidence of the existence of Mr. Stavrakis's motive at the time of the crime alleged. What is relevant to his motive is the situation he faced in July of 2015, not 2010 through 2014.

2. **Statements Made By GGG And Travelers In Emails And Letters Are Hearsay And Are Not Statements By A Party Opponent.**

The government seeks to admit a large volume of emails written and sent by employees of GGG, the insurance adjuster hired by Adcor to process its claim with Travelers Insurance. Upon receiving these exhibits from the government, the defense assumed that they were intended to be used for identification only, as they appeared to be classical hearsay. During the conference among counsel on Friday, September 6, 2019, however, the defense learned that the government intended to admit these exhibits as substantive evidence in its case in chief, under the theory that they were statements by an agent of a party opponent under Rule of Evidence 801(d)(2)(D). Although the defense would agree that emails or other properly authenticated correspondence written by Mr. Stavrakis himself would be admissible, the defense does not agree and objects to the admission of out of court statements made by GGG or others based on the theory that GGG was acting as Mr. Stavrakis's agent.

"Rule 801(d)(2)(D) requires that an agency or employment relationship must have existed between the declarant and the party. * * * [S]tatements of a party's independent contractors typically do not come within Rule 801(d)(2)(D)." *Powers v. Coccia*, 861 A.2d 466, 470 (R.I. 2004) (quoting 5 *Weinstein's Federal Evidence* § 801.33[2][b] at 801–65, 67 (2d ed. 2002). In order to establish an agency relationship permitting the application of Rule 801(d)(2)(D) the proponent of the evidence must establish: "(1) a manifestation by the principal that the agent will act for him, (2) acceptance by

the agent of the undertaking, and (3) an agreement between the parties that the principal will be in control of the undertaking." *Norton v. Boyle,* 767 A.2d 668, 672 (R.I.2001) (quoting *Lawrence v. Anheuser–Busch, Inc.,* 523 A.2d 864, 867 (R.I.1987))." *Id.* By contrast, independent contractors who offer "services to the public to accept orders and execute commissions for all who may employ such person in a certain line of duty, using his or her own means for the purpose of being accountable only for the final performance" are not agents and their out of court statements are not admissible under the hearsay exception. *Id.* (quoting 41 Am. Jur. 2d *Independent Contractors* § 1 at 397 (1995).

"Determining whether… purported statements… qualify as an exception to the hearsay rule depends therefore on whether either or both individuals served as Defendants' 'agent' or 'independent contractor'…. Here, no evidentiary proof in admissible form has been presented to demonstrate that Defendants intended Ventura to act as their agent for the demolition project." *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 884 (E.D.N.Y. 2004) (citing *Iwachiw v. New York State Department of Motor Vehicles,* 299 F.Supp.2d 117, 123 (E.D.N.Y.2004)). It is apparent from the standard set forth in these cases that the question of agency is one of fact, and it is a fact that the proponent of the hearsay statement must establish.

Here, the government has proffered no admissible evidence that GGG was Mr. Stavrakis's agent. The government bears the burden of establishing this as a predicate to admitting GGG's out of court statements. The government would be unlikely to meet this burden, because GGG was, in fact, hired as a contractor and operated in such a way that it was unlike an attorney or agent of Adcor or Mr. Stavrakis. Rather, GGG used its own means for the purpose of being accountable only for the final performance of recovering an insurance settlement for Adcor. *See Norton, supra.*

The cases cited by the government in its effort to establish that insurance adjusters are necessarily agents of the insured do not actually address this issue on its merits. In point of fact, all of the cases cited by the government are rooted in the opinion in *Republic Ins. Co. v. Jernigan*, 753 P.2d 229, 231 (Colo. 1988).[1] But in *Republic Ins. Co* the question of whether the insurance adjuster was an agent of the insured was not actually at issue before the court. Rather that agency relationship appeared not to be contested at all. Therefore, the cases cited by the government, when examined carefully, do not stand for the proposition that all public adjusters are automatically, or as a matter of law, agents of the insured. This stands in contrast to the cases cited by the government dealing with agency relationships between attorneys and their clients. The attorney-client relationship is the prototypical agency relationship, and cases dealing with that legally formulaic dynamic are not on point here.

Alternatively, the government argues that GGG's emails are business records that may be admitted under Rule 803(6). But again, the government ignores the necessary predicate for the

---

[1] In *Hometown Cmty. Ass'n, Inc. v. Philadelphia Indem. Ins. Co.*, 17-CV-00777-RBJ, 2018 WL 2008853, at *3 (D. Colo. Apr. 30, 2018) the court relied upon *Church Mut. Ins. Co. v. Coutu*, 17-CV-00209-RM-NYW, 2017 WL 4029589, at *4 (D. Colo. Sept. 13, 2017), *report and recommendation rejected,* 17-CV-00209-RM-NYW, 2018 WL 1517022 (D. Colo. Mar. 28, 2018) for the proposition that "a public adjuster is considered an agent of the insured."). *Church Mut. Ins. Co*, in turn, relied upon *Republic Ins. Co. v. Jernigan*, 753 P.2d 229, 231 (Colo. 1988) for this proposition, while also noting that "[i]t appears that defendants accept the premise that Coutu, as the insured's public adjuster, acted as the insured's agent. (*See* ECF No. 127 at 6–7.)[1] *Id.* at *2). But, *Republic Ins. Co.*, much like *Church Mut. Ins. Co* did not decide this issue, rather it accepted the agency as a given to form the basis for its analysis on other issues.

admission of such records. Contrary to the government's apparent argument, emails are not business records simply because they are sent or maintained by a business.

> While properly authenticated e-mails may be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records falling within the ambit of Rule 803(6)(B). 'An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule.' *Morisseau v. DLA Piper,* 532 F.Supp.2d 595, 621 n. 163 (S.D.N.Y.2008). The district court's observation that the e-mails were kept as a "regular operation of the business" is simply insufficient on that basis alone to establish a foundation for admission under Rule 803(6)(B).

*United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013).

Again, the government bears the burden of establishing the elements of the business records exception, that the records were "(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) [it was] 'the regular practice of that business to make the memorandum,' (4) and [that the records were] made by a person with knowledge or from information transmitted by a person with knowledge." *Clark v. City of L.A.*, 650 F.2d 1033, 1036–37 (9th Cir.1981) (quoting Fed. R. Evid. 803(6)). This analysis is fact-specific, and each exhibit must be examined on its own merits in light of the testimony elicited about that individual message. It would be contrary to the letter and spirit of Rule 803(6) to admit all of GGG's emails wholesale, rather than conduct this necessary inquiry about whether each of them individually were properly classified as business records.

Finally, the government argues that these messages are somehow admissible by virtue of them forming the "gravamen of the allegations" in the Superseding Indictment. But the government's alleged *need* to introduce these records does not somehow exempt them from the strictures of the Rules of Evidence. Nor does the government's argument about the contested messages being necessary to "provide context" excuse ignoring the rule against hearsay. These contested exhibits are clearly out of court statements, admitted for the truth of the matter they assert, and they should be subjected to the rigorous standards long-established for the handling of such statements as evidence.

Sincerely,

/s/

G. Adam Ruther

Cc: All Counsel of Record via ECF filing

4836-9471-6324, v. 1