**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| v. | : CRIMINAL NO.  ELH 19-0160 |
| **DEMETRIOS STAVRAKIS,** | : |
| Defendant. | : |

**THE GOVERNMENT'S MOTION FOR RECONSIDERATION OF
THE COURT'S DECISION EXCLUDING TESTIMONY BY MICHAEL BROWN
THAT THE DEFENDANT SOLICITED HIM TO COMMIT AN ARSON AT
234 S. HAVEN STREET IN THE SUMMER OF 2013**

The United States of America, by its undersigned counsel, states the following in support of this motion asking that the Court reconsider its previous decision on September 24, 2019 excluding Michael Brown's testimony that on multiple occasions in the summer of 2013, the defendant solicited him to carry out an arson at 234 S. Haven Street, the building that housed the defendant's various Adcor companies.  For the reasons set forth below, we believe the Court reached an erroneous conclusion that Brown's testimony was not admissible as Rule 404(b) evidence related to the subsequent fire on July 29, 2015, because it misapplied the "necessity" and "reliability" prongs of the Fourth Circuit's standard governing the admission of evidence pursuant to FED. R. EVID. 404(b).[1]  *See United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997).

---

[1]  While we continue to believe that the prior arson solicitation involving the same structure subsequently burned here is admissible as "intrinsic" evidence, in light of the definitive character of the Court's ruling on that question, Transcript (Tr.) of 9/24/19 Hearing at  21, we will not revisit that issue.

## THE COURT'S PRIOR RULING

The Court previously heard argument on this issue on the morning of Tuesday, September 24th, the ninth day of trial.  As the Court pointed out at the start of the hearing, the failure of either party to raise the issue pre-trial resulted in a rushed briefing schedule commencing with a defense motion *in limine* filed at 7:15 p.m. on Sunday, September 22nd (ECF # 168), followed by a government opposition that was filed on Monday evening, September 23rd at 8 p.m. (ECF # 170) and a defense reply later that night.  This circumstance afforded the Court only a limited opportunity to review the relevant cases prior to the hearing on the morning of the 24th.[2]  Tr. at 5.

After hearing argument from counsel, the Court made the following rulings.  First, the Court concluded that the evidence of the defendant's earlier solicitation of Brown in the summer of 2013 could not be considered an intrinsic part of the offense conduct here because "intrinsic would be . . . essentially the same criminal conduct," Tr. at 22, and that "the claim that the defendant sought the help of Mr. Brown to use some gas leak to start a fire two years before the actual fire was set by methanol is not the same crime." *Id.*

The Court then analyzed the admissibility of Brown's account of the earlier arson solicitation under FED. R. EVID. 404(b).  The Court stated that its principal concerns were whether the "necessity" and "reliability" prongs of the *Queen* test were met.  *Id.* at 32.  However, the Court did not discuss the "necessity" prong in detail, and a moment later summarized its ruling by stating that "I feel at this moment I'll settle on the probative value is outweighed by the

---

[2]   For the government's part, we regret that we failed to recognize that the admissibility of this evidence could have been dealt with when we filed our motion *in limine* concerning the 2007 fire and the 2003 building collapse on May 3, 2019.  ECF # 36.

potential prejudice" – which would be a basis for exclusion under FED. R. EVID. 403 – "and the fact that it is a he said/he said case," which goes to *Queen*'s "reliability" component. *Id.*

However, the Court further stressed that "I think it's not a final ruling of the Court. I just want to make that clear. . . . I am not going to allow this to be introduced directly in the government's questioning of Mr. Brown. But if it comes out, if the door is opened, I am going to change my mind." *Id.* at 33.

Mr. Brown subsequently testified, and the defense did not cross-examine him. In light of the Court's concluding comments at the hearing on the 24th, we wanted to provide the court with a statement of supplemental authorities that address the concerns the Court expressed in support of its original ruling. We also wished to correct one erroneous legal statement that slipped into our previous filing (ECF # 170) as a result of the time pressure under which it was produced.

## ARGUMENT

I. **BROWN'S TESTIMONY THAT THE DEFENDANT PREVIOUSLY SOLICITED HIM TO COMMIT AN ARSON AT 234 S. HAVEN STREET FACILITY MEETS *QUEEN*'S "NECESSITY" REQUIREMENT**

With regard to "necessity," the Fourth Circuit's seminal decision in *Queen* setting forth the requirements for admissibility of extrinsic evidence under Rule 404(b) stated simply that "The act must be necessary *in the sense* that it is probative of an essential claim or an element of the offense." 132 F.3d at 997 (emphasis added). The Fourth Circuit's language in *Queen*, along with its subsequent decisions applying Rule 404(b), therefore make it clear that in this context, "necessary" does not have the dictionary meaning of "indispensable" or "absolutely required," WEBSTER'S NEW COLLEGE DICTIONARY (1995 ed.) at 731, but rather means that the evidence has persuasive force in establishing a factual point that is material to the jury's decision on a civil claim or criminal offense. The Fourth Circuit has recognized that testimony that supplies useful

3

proof of the elements of knowledge and intent is "reasonably necessary." *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir. 1982); *United States v. Mark*, 943 F.2d 444, 448 (1991). Thus, in *Hadaway*, a case involving a prosecution for aiding and abetting a theft from an interstate shipment of television sets, the Court found that where there were alternative potentially innocent explanations for several of the defendant's apparently incriminating actions during the time period of the crime, it was appropriate to introduce evidence that the defendant assisted with three other instances of theft from an interstate shipment over the course of the subsequent 18 months. 681 F.2d at 217-18.

Here, the central issue in this case is whether the defendant knew of, planned, and assisted in carrying out the acknowledged arson that seriously damaged 234 S. Haven on the night of July 28/29, 2015, or whether he was merely an innocent (if fortuitously benefitted) bystander. Evidence that sheds light on whether the defendant commissioned, arranged, and assisted that arson – or even carried it out by himself unassisted – is clearly probative of essential factual issues that must be decided by the jury. And it serves to prove many of the permissible (but nonexhaustive) list of uses recognized by Rule 404(b), including motive, intent, preparation, plan, and identity.[3]

As the Court has observed, the evidence that the defendant participated in the actual setting of the fire focuses on his defeating a significant feature of the security system on the night of the fire. While this is powerful evidence of the defendant's role is the setting of the fire, there is no evidence of who actually lit the fire, and of course, the defendant will point out that his

---

[3] The courts have emphasized that the list of permissible uses in Rule 404(b) is not exhaustive, as is hardly surprising given that these uses are preceded by the words "such as." *See, e.g., United States v. Sanchez*, 118 F.3d 192, 195 (4th Cir. 1997); *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988).

phone was at his residence at the time of the fire.  Additionally, during opening statements, the defense promised that he will establish that he was home with his family at the time of the fire.  Thus, the evidence of the defendant's solicitation of another person to help set a fire during the downward financial spiral is necessary evidence of the defendant' planning, preparation, and identity.  Additionally, both in opening statement and through cross examination of numerous witnesses, the defense has repeatedly criticized the investigation for improperly focusing on the defendant and misinterpreting evidence.  These arguments, which are sure to continue through the Government's case as well as the Defense case, highlight the necessity for the Government to establish the full scope of the information gathered during the investigation relating to the defendant's responsibility for the fire.

The "necessary" character of the prior solicitation evidence will become even more apparent when the trial reaches the defense case, particularly if the defendant himself, and some or all of his proffered expert witnesses, take the stand.  The defense has submitted expert witness disclosures to the government proffering that he intends to call a quartet of "expert" witnesses who will contend, *inter alia*, (1) that Adcor's finances were not that dire and that, in any case, the defendant had other realistic financing options that would have enabled his business to avoid bankruptcy; (2) that from its circumstances, this appears to have been a revenge fire, and not an arson-for-profit (or an arson that was less than competently executed); (3) that the taping of the front doors of the facility was something commonly done for entirely legitimate reasons and had nothing to do with the acknowledged arson; and (4) that the apparently missing video surveillance files never existed to begin with.  Mr. Brown's testimony indicating that the defendant perceived his company's financial circumstances in the late summer of 2013 to be so precarious that he could see no other way out other than an arson/insurance fraud scheme will

certainly constitute appropriate and necessary rebuttal to expert testimony of this character by witnesses who have no first-hand knowledge of the defendant's contemporaneous perception of his situation as Adcor's finances worsened.

Finally, it appears that, whether through the defendant's own testimony, or through the argument of counsel, the defense will directly contend or at least suggest that Mr. Brown was himself the arsonist, and that he acted for reasons for personal malice towards the defendant. In light of these circumstances, we can certainly understand why the defense wishes to gag Mr. Brown and preclude him from responding directly to its accusations or insinuations, but doing so will not further "the end of ascertaining the truth and securing a just determination in this case." FED. R. EVID. 102.

## II. BROWN'S TESTIMONY ABOUT THE DEFENDANT'S EARLIER ARSON SOLICITATION MEETS *QUEEN*'S "RELIABILITY" REQUIREMENT

Although the Court did make some references to the "necessity" prong of Rule 404(b) at the prior hearing on September 24, its comments at that time suggested that its principal concerns regarding the evidence of the prior arson solicitation related to the requirement of "reliability" and to whether the evidence was unduly prejudicial and thus excludable under Rule 403: "I feel at this moment I'll settle on the probative value is outweighed by the potential prejudice, and the fact that it is a he said/he said case." Tr. at 32. As shown below, however, the case law does not support the Court's expressed concern about the reliability prong, but we must acknowledge that some language in our original brief may well have contributed to what we believe was the Court's mistaken conclusion.[4]

---

[4] The government acknowledges that none of the parties' previous briefs discussed the case law relating to the "reliability" prong in any detail.

The Fourth Circuit's case law establishes that evidence is deemed "reliable" for purposes of admission under Rule 404(b) and should be submitted to the jury for its consideration "unless it is 'so preposterous that it could not be believed by a rational and properly instructed juror.'" *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996), *quoting United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993). *See also, e.g.*, *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008).

Since filing our original brief (ECF # 36) after Court on Monday the 23rd, however, we have realized that it misstated the showing that the reliability standard requires when it neglected to cite the Fourth Circuit cases quoted above, and instead stated that "reliability only requires proof of the identified acts by a preponderance of the evidence." *Id.* at 10, *citing Huddleston v. United States*, 485 U.S. 681, 689 (1988).[5] This statement was erroneous, and was based on a misreading of *Huddleston*. In fact, *Huddleston* squarely rejected the defendant's contention in that case that evidence offered under Rule 404(b) should be subject to some higher threshold than is usually the case for admissibility. The (unanimous) Court pointed out that the Advisory Committee's notes "indicated that the trial court should assess such evidence under the usual rules for admissibility," before going on to state that:

> We conclude that a preliminary finding by the court that the Government has proved the act by a preponderance of the evidence is not called for under Rule 104(a). . . . In the Rule 404(b) context, the standard is merely that the jury can reasonably conclude that the act occurred and that the defendant was the actor.

*Id.* at 689; *see also United States v. Westwood*, 956 F.2d 1169, at *1 & n.* (9th Cir. Mar. 9, 1992) (unpublished) (noting that "The Court did not intimate that any particular quantum of proof was necessary" beyond that). Moreover, in determining whether the proponent of the

---

[5]   In its reply brief (ECF # 171 at 6), the defense quoted our mistaken assertion about *Huddleston*, but likewise failed to catch or correct the error.

404(b) evidence has met this minimal standard, the Supreme Court stressed that the trial court "must consider *all* evidence presented to the jury" (emphasis added), not merely the 404(b) evidence standing alone – because "The sum of an evidentiary presentation may well be greater than the sum of its constituent parts." *Huddleston*, 485 U.S. at 690-91, *quoting Bourjaily v. United States*, 483 U.S. 171, 179-80 (1987). [6]

---

[6] *Huddleston* has occasionally given rise to some confusion (as it did in the prior brief upon which we relied) in that it did went on to address a particular subset of Rule 404(b) cases (of which this is not one), where the proffered evidence is relevant only if some conditional fact is established. Thus, in *Huddleston* itself, the fact that the defendant had previously sold televisions would not be relevant and admissible under FED. R. EVID. 104(b) (Preliminary Questions: Relevance that Depends on a Fact) unless "the jury could reasonably find that the televisions were stolen." *Id.* But even where it is necessary to find such a conditional fact – which it is not here, as discussed below – *Huddleston* held that there is no threshold requirement that the court must find that this fact is established by a preponderance of the evidence:

> In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), *the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence.* The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact – here, that the televisions were stolen – by a preponderance of the evidence.

*Id.* at 690 (emphasis added); *see also id.* at 687 ("We reject petitioner's position" that a preliminary finding by a preponderance of the evidence is required), and at 690 (characterizing the proponent's burden as "this minimal standard of proof"). Both the Fourth Circuit and other courts have since recognized that *Huddleston* does not require that proffered Rule 404(b) evidence involving a conditional fact be subject to proof by a preponderance of the evidence to the satisfaction of the court before being admitted. *See, e.g., United States v. Lopez*, 860 F.3d 201, 217 (4th Cir. 2017); *United States v. Record*, 873 F.2d 1363, 1374 (10th Cir. 1989); *United States v. Schleicher*, 862 F.2d 1320, 1322 & n.2 (8th Cir. 1988); *United States v. Nektalov*, 325 F. Supp.2d 367, 371 (S.D.N.Y. 2004).

However, this case is not one where the relevance of the proffered 404(b) evidence was subject to a finding of conditional fact, as in *Huddleston*. In *Huddleston*, the fact that the defendant had previously sold the televisions and other goods was only relevant if the jury could find reasonable grounds for believing that the televisions were stolen. Here, in contrast, the defendant's conduct in soliciting one of his employees to torch Adcor's facility was *ipso facto* a relevant unlawful act.

8

The Court's comment at the hearing on September 24th that its primary justification for excluding the evidence on reliability grounds was "the fact that it is a he said/she said case" (Tr. at 32) further overlooks the fact that "corroborating evidence to support the prior-act evidence is not required." *United States v. Hornsby*, 666 F.3d 296, 308 (4th Cir. 2012); *see also Bailey*, 990 F.2d at 123; *United States v. Johnson*, 872 F.2d 612, 624 (5th Cir. 1989) ("No 'independent proof' [of Rule 404(b) evidence] was necessary."); *United States v. Leisure*, 807 F.2d 143, 145 (8th Cir. 1986); *United States v. Bustamente*, 951 F.2d 363, at *1 (9th Cir. Dec. 16, 1991) (unpublished) (noting, where a police informant named Chambers offered Rule 404(b) testimony that the defendant had purchased cocaine from him on several earlier occasions distinct from that charged, that "[w]hether Chambers's veracity was shaky has no bearing on the issue" of his testimony's admissibility). Indeed, the case law recognizes, and juries are commonly instructed, that they may believe the uncorroborated testimony of a single witness or lesser number of witnesses if they find it credible, even in the face of contradictory testimony offered by a greater number of witnesses. *See, e.g.*, *United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997) ("the uncorroborated testimony of one witness or of an accomplice may be sufficient to sustain a conviction"); *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983); *United States v. Riggins*, 299 Fed. App'x 288, 289 (4th Cir. 2008). *See also* L. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL, Instruction 4-3 (Number of Witnesses and Uncontradicted Testimony).

Nor should this be surprising. In particular, solicitations to engage in criminal conduct like that at issue here are rarely put into documentary form, as juries are routinely instructed, and for obvious reasons they are likewise often not advanced in the presence of other witnesses. Many criminal cases involve the admission of proof of unlawful acts (or acts probative of the

charged criminal conduct) that are committed through conversations or encounters between two individuals as to which not only is there no documentary corroboration, but no other witnesses. *See, e.g.*, *United States v. Long*, 328 F.3d 655, 659-61 (D.C. Cir. 2003) (admitting under Rule 404(b) testimony by two youths just at or above the age of consent in a defendant's trial for interstate transportation of six minors with intent to engage in sexual activity); *Aramony*, 88 F.3d at 1376-77 (affirming the admission as Rule 404(b) evidence of testimony by several of the defendant's former employees that they had sexual relationships with him or that he made sexual advances to them, typically in private hotel rooms while on out-of-town business trips); *United States v. Mills*, 995 F.2d 480, 485 (4th Cir. 1995) (approving the admission of 404(b) evidence from a co-conspirator relating to other, uncharged drug transactions carried out by the defendant); *Bailey*, 990 F.2d at 121-23 (payment of cash bribes to a state legislator).

As these cases reflect, the mere fact that a defendant has expressed a stated (but in this case, so far untested) willingness to dispute another witness's account of an event or discussion to which they were the only parties does not, under the law, afford them the ability to interpose a veto on the ability of that other witness to take the stand and testify. And as the Supreme Court has noted in the context of identification evidence, except where uncertainty or unreliability gives rise to a very substantial likelihood of irreparable misidentification,

> such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

*Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). The Fourth Circuit stressed this same point in *Bailey*, a public corruption case in which the government proposed to call a witness named Kohn to testify about an uncharged transaction in which he paid the defendant $200 for his assistance

in getting a stretch of road paved. 990 F.2d at 121-23. The defendant in *Bailey*, just like defendant's counsel here, contended "that Kohn is a liar, that he had a good reason to lie and that the government had a duty to corroborate Kohn's testimony before it could pass the reliability prong of *Rawle*." *Id.* at 123. But the Fourth Circuit on appeal made short shrift of those objections, noting pointedly that

> Reliability is not synonymous with credibility when dealing with 404(b) evidence. The trial judge correctly observed that it was for the jury to determine if Kohn was telling the truth about the $200 payment to Bailey. . . . Kohn's reputation, character and past acts were explored on cross examination and his credibility was before the jury. Testimony is not unreliable simply because it is in conflict with or contradicted by other testimony. Nor is it unreliable because a witness has an unsavory past. These are merely circumstances for the jury to consider.

*Id.* at 123.

Moreover, in this case there *is* significant other evidence that supports the credibility of Mr. Brown's proffered testimony about the defendant's solicitation. He is not a person with a deeply checkered past, but a respected and hard-working product design engineer who had been employed by Adcor for 13 years and who developed who had received over two dozen Federal patents. There is no obvious reason why he would risk his reputation, professional standing, and potentially his liberty by lying under oath in this case. And by this point in the trial, both the court and the jury have had the opportunity to assess Mr. Brown's credibility at length through his testimony in the government's case.

Other evidence that has already been presented by the government further buttresses the credibility of Mr. Brown's proffered testimony about the defendant's arson solicitation. The defendant's businesses were in serious financial difficulties at the time of Brown's conversation with the defendant in the summer of 2013, and the defendant had past experience with building damage and insurance payouts that could reasonably have lead him to see this as a potential way

out. Brown did leave the defendant's employment at the time he maintains this conversation occurred in the summer of 2013. And an arson incontestably did take place at Adcor Industries in the summer of 2015, when the financial stress it was under had grown even more significant, and that arson was accompanied by a number of suspicious circumstances –disarming partition one of the alarm at 12:25 a.m., disarming partition two of the alarm at 12:33 a.m., navigating through a cavernous darkened shop floor to retrieve the 5 gallon drum of methanol, and then navigating back across the floor with the drum of methanol to the DNC Hut to start the fire – suggesting that it was deliberately set either by, or with the assistance of, a person who had regular control of or was deliberately afforded access to the premises. Given these surrounding circumstances, we submit in a one-against-one credibility contest between Mr. Brown and the defendant, the defendant's position is by far the weaker.

### III. THE EVIDENCE OF THE DEFENDANT'S PRIOR ARSON SOLICITATION IN 2013 IS NOT UNFAIRLY PREJUDICIAL AND THEREFORE SUBJECT TO EXCLUSION UNDER FED. R. EVID. 403

If the Court does reconsider its decision on the arson solicitation evidence before the end of the trial, it may wish to have available to it a more substantial discussion of the application of Rule 403 in that case than either of the parties produced during the initial round of briefing.

First, once the Court finds that the arson solicitation evidence is properly admissible under Rule 404(b), the burden upon the defendant in arguing that it should nevertheless be excluded under Rule 403 is almost prohibitively high. The Fourth Circuit has repeatedly stressed that where the evidence sought to be excluded under Rule 403 "is concededly probative, the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *Aramony*, 88 F.3d at 1378. Likewise, in *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007), the Court emphasized that the exclusion of evidence pursuant to

Rule 403 should be ordered only rarely, because the general policy of the Federal rules is that all relevant material should be laid before the jury. *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007). *See also United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("the application of Rule 403 is to be cautious and sparing"). Rule 403 itself provides that the court must find that the probative value of the evidence is "substantially outweighed" by one or more of a list of potential dangers, of which the one relied upon the defense here is "unfair prejudice." Defendant's Motion to Exclude (ECF # 168), at 9.

Of course, the mere fact that evidence damages a defendant's case is not a basis for excluding probative evidence, because "[e]vidence that is highly probative invariably will be prejudicial to the defense." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998); *see also* 2 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 404.21(3)(b) Joseph M. McLaughlin, ed., 2d Ed. 2002) (unfair prejudice "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence"). Instead, "unfair" prejudice "damages an opponent for reasons other than its probative value, for instance, an appeal to emotion," *United States v. Mohr*, 318 F.3d 613, 619-20 (4th Cir. 2003), or because it serves to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The Fourth Circuit has long affirmed that the showing of undue prejudice required by Rule 403 permits exclusion of relevant evidence only where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior. *Masters*, 622 F.2d at 87; *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986) ("The prejudice which the rule is designed to guard against is jury emotionalism or irrationality."). And that brings to us a common sense point that the defendant's reply brief was desperate to quickly move beyond

(ECF # 171 at 7-8): that evidence is not unfairly prejudicial (and is unlikely to give rise to jury emotionalism or irrationality) when it involves conduct that is either substantially similar to, or no more sensational and disturbing than, the crimes with which the defendant is charged. *See, e.g., United States v. Siegel*, 536 F.3d 306, 315-20 (4th Cir. 2008) (approving admission of evidence of defendant's twenty-year history of defrauding those close to her in a case where she ultimately murdered the older man she was living with); *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998) (admission of evidence of other fraudulent telemarketing activity by defendant in criminal telemarketing trial was not unduly prejudicial under Rule 403); *United States v. Van Metre*, 150 F.3d 339, 351 (4th Cir. 1998) (evidence of defendant's prior brutal kidnaping and rape of another woman was not unduly prejudicial in a case where he was charged with kidnaping, raping and murdering a woman); *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995); *United States v. York*, 933 F.2d 1343, 1350-54 (7th Cir. 1991) (evidence that defendant had killed his first wife and collected proceeds of her insurance policy was properly admissible as other bad acts evidence in his prosecution for killing his second wife and collecting insurance proceeds from causing the destruction of his business by arson); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Here, the fact that the defendant contemplated carrying out an arson if he could find someone else to do the dirty work in the summer of 2013 is certainly far less prejudicial than the substantial evidence that indicating that in the summer of 2015, he either found another to do so or executed it in a somewhat amateurish fashion himself. That obvious fact accounts for the defense's almost desperate desire to dismiss the holdings in these cases without making any attempt to answer them.

Moreover, in arguing that Mr. Brown's proffered testimony is so weak and unpersuasive that it fails to even reach the "minimal standard" for the admission of other acts evidence

(*Huddleston*, 485 U.S. at 690), while simultaneously asserting that hearing this testimony would have such a powerful effect that it would cause the jury to be swept away on an uncontrollable tide or emotionalism and irrationality, heedless of any cautionary instruction the Court might give, the defendant is trying to straddle two stools that are worlds apart.  This is more than he can manage, and the blatant internal contradictions of his argument completely undermine it.

Finally, as the Eleventh Circuit has pointed out, the "major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by its heels for the sake of its prejudicial effect."  *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985).  Evidence that the defendant previously contemplated committing an arson two years before his business was seriously damaged by one does not come close to that.  This is not a situation where the "other acts" evidence the government intends to introduce against him involves violent crimes, sexual abuse, or other crimes that are likely to trigger an emotional, gut-level response by a jury. *Compare United States v. Gray*, 78 F. Supp.2d 524, 532 (E.D. Va. 1999) (defendant successfully sought to sever charges relating to possessing child pornography from charges of unauthorized access to his government computer); rather, the other acts evidence here involves a criminal act that is comparable and similar, but less serious than, the criminal acts charged in the indictment for which he is on trial.

Throughout the federal courts' Rule 404(b) jurisprudence, it is consistently stressed that limiting instructions pursuant to FED. R. EVID. 105 are an appropriate and effective safeguard against unfair prejudice or jury misunderstanding or confusion about the proper uses of such evidence.  *See, e.g.*, *Huddleston*, 485 U.S. at 691-92; *Queen*, 132 F.3d at 997 ("In cases where the trial judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may improperly use the evidence subsides."); *Aramony*, 88 F.3d at 1378; *United States v. Powers*, 59

F.3d 1460, 1468 (4th Cir. 1995) ("cautionary instructions generally obviate such prejudice"); *Greenwood*, 796 F.2d at 53 ("the trial judge gave a cautionary instruction, which was sufficient to overcome whatever unfair prejudice might have existed"). The defendant never addresses this repeated guidance from the courts – perhaps understandably believing the less said about it, the better – and opts instead for rankly conclusory assertions that "it is obvious" that the jury would misapply the evidence of the earlier arson solicitation if allowed to hear it. Defendant's Reply Brief (ECF # 171) at 8. To the contrary: that is not obvious at all -- as reflected by the courts' repeatedly expressed confidence in the good sense and fairness of juries in considering such evidence, as well as in the commitment of juries to conscientiously following the jury instructions they receive from the district court. *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993); *Richardson v. Marsh*, 481 U.S. 200, 209 (1987); *United States v. Najjar*, 300 F.3d 466, 475 (4th Cir. 2002); *United States v. Johnson*, 54 F.3d 1150, 1161 (4th Cir. 1995); *United States v. Silva*, 745 F.2d 840, 844 (4th Cir. 1984) ("Any prejudicial effect of the necessary introduction of the defendant's past conviction can, we feel, be avoided through the use of a limiting construction.").

That two years passed between Mr. Brown's conversation with the defendant and the actual arson at Adcor Industries has not been viewed as a particularly significant span of time by the Fourth Circuit, or by other courts. In *United States v. Naylor*, 705 F.2d 110, 111-12 (4th Cir. 1983), the Fourth Circuit held that a defendant's prior misdemeanor conviction in 1980 for attempted theft of a motor vehicle was admissible in a 1982 prosecution for attempted theft of a motor vehicle that arose out of a wholly separate incident. *See also Valenti v. Allstate Insurance Co.*, 243 F. Supp. 2d 221, 227 (M.D. Pa. 2003) (approving the admission of testimony that the insured – in a civil insurance case – had previously solicited a tenant to burn down a different building 5 to 6 years earlier, finding that prior solicitation was highly relevant).

**CONCLUSION**

For the reason stated above, the Court should find that the prior arson solicitation evidence meets all three elements of the *Queen* standard for admissibility under Rule 404(b), and further find that its probative value is not substantially outweighed by its potential for causing unfair prejudice as a result of an emotional or irrational decision by the jury under Rule 403. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980); *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986).

        Respectfully Submitted,

        Robert K. Hur
        United States Attorney

        _____/ss/_____
        Judson T. Mihok
        Paul E. Budlow
        Assistant United States Attorneys