

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Judson T. Mihok*  *Suite 400*  DIRECT: 410-209-4903
*Assistant United States Attorney*  *36 S. Charles Street*  MAIN: 410-209-4800
*Judson.Mihok@usdoj.gov*  *Baltimore, MD 21201-3119*  FAX: 410-962-0716

January 17, 2020

The Honorable Ellen L. Hollander
United States District Court
Edward A. Garmatz United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

    Re:    United States v. Demetrios Stavrakis,
                  Crim. No. ELH-19-0160

Dear Judge Hollander:

    The sentencing hearing in the above-captioned matter is currently scheduled for Friday, January 24, 2018, at 10:00 a.m. As calculated in the Presentence Investigation Report ("PSR"), the Defendant's offense level is 33 and his criminal history category is I, which results in an advisory USSG range of 135 to 168 months. In addition, there is the 120-month sentence required to run consecutively for the Defendant's conviction on Count One, Use of Fire to Commit a Federal Felony, which brings the aggregate sentence to 255 to 288 months. Count Four, the Malicious Destruction of Real Property by Fire, requires a mandatory minimum sentence of 60 months. Therefore, operation of Counts One and Four require a mandatory minimum sentence of 180 months.

    As indicated in the Government's previously filed Notice, the Government intends to call ATF TFO Dexter Hodges to testify at the sentencing hearing regarding the Defendant's involvement in the 910 Grundy Street fire in 2007, which the Government alleges was a set fire that resulted in the recovery of approximately $10 million from the insurance claim that followed. The Government intends to prove those allegations by a preponderance of the evidence to support consideration of these facts and circumstances as this additional information is clearly relevant to the statutory sentencing factors outlined at 18 U.S.C. § 3553(a).[1]

    The Government recommends a sentence of two-hundred and sixty-four (264) months (22 years) in the Bureau of Prisons, to be followed by three (3) years of supervised release, restitution

---

[1] The Government submits that even if the Court does not find that the Defendant was responsible for setting this fire by a preponderance, the mere fact of a prior contested multi-million dollar insurance claim resulting from fire damage is relevant to the 2015 arson.

of $15,525,602.55, forfeiture as outlined in the Government's proposed order of forfeiture, and a special assessment of $400.

## I.   18 U.S.C. § 3553(a) Sentencing Factors

Consideration of the sentencing factors outlined at 18 U.S.C. § 3553(a) supports the sentence the Government is seeking.

First, "the nature and circumstances of the offense and the history and characteristics of the defendant;" under 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" under 18 U.S.C. § 3553(a)(2)(A), both justify the sentence that the Government seeks. The offense conduct was extremely serious. Any arson poses the danger of death or serious bodily injury to civilians and first responders, and this fire was no different. As Baltimore Fire Department Lt. Michael Myers testified at trial, heavy smoke was banked nearly to the floor when firefighters first entered, which greatly reduced visibility. With the machines and hazardous materials stored at Adcor, the danger to first responders was quite real. And Adcor is bordered by row homes to the north, as a satellite and street views illustrate, copies of which are attached as Government Sentencing Memo Exhibit A. It is not difficult to image that the fire set at 234 S. Haven Street could have spread to set these nearby occupied residences ablaze.

Arson is a gravely serious offense. Sentences in arson cases clearly establish the severity of the offense conduct. In *United States v. Ramsey*, GLR 15 00651, the defendant pled guilty on the third day of trial to malicious destruction of property by fire, use of fire to commit a federal felony, and witness tampering, and was sentenced to an aggregate sentence of 355 months.[2] See also, *United States v. Wilson*, 452 F. App'x 418, 420 (4th Cir. 2011) (sentence affirmed where the Court departed upward from advisory USSG range of 63-78 months and imposed the statutory maximum term of 240 months); *United States v. Mason*, 410 F. App'x 881, 885 (6th Cir. 2010) (sentence of 262 months' imprisonment arson related counts affirmed as reasonable); *United States v. Truman*, 581 F. App'x 26, 32 (2d Cir. 2014) (within advisory USSG sentence of 217 months' imprisonment affirmed as reasonable); *United States v. Polanco*, No. 13 C 6098, 2017 WL 3780592, at *4 (N.D. Ill. Aug. 30, 2017) (arson involving serious bodily injury to two victims where the court sentenced Gonzalez to 300 months (from advisory USSG range of 97-121 months) and Polanco to 210 months (from advisory USSG range of 78-97 months); *United States v. York*, 600 F.3d 347, 351 (5th Cir. 2010) (arson of a courthouse with an incendiary device, sentence of 497 months' imprisonment affirmed); *United States v. Aljabari*, 626 F.3d 940, 950 (7th Cir. 2010) (sentence of 110 months of imprisonment for violation of 18 U.S.C. § 844(i), 13 months above the high end of the advisory guidelines range of 78 to 97 months, affirmed as reasonable).

---

[2] Since 2015, this appears to be the only conviction for 18 U.S.C. § 844(h)(1) in the District of Maryland. The Defendant's Criminal History Category was IV, and his advisory USSG range was 355 to 413 months.

In addition, fraud involving insurance claims standing alone is a serious offense which merits a severe sanction. While the nature of fraud makes assessing costs elusive, the FBI estimates that the total cost of insurance fraud (excluding health insurance) is more than $40 billion per year, which costs the average U.S. family between $400 and $700 per year. FBI Crime Report, Insurance Fraud (https://www.fbi.gov/stats-services/publications/insurance-fraud). These crimes are often hard to detect. Specifically regarding arson, it is estimated that there are more than 50,000 intentional structure and vehicle fires annually, causing in an estimated $1 billion in property damage. National Insurance Crime Bureau (https://www.nicb.org/sites/files/2017-10/AM1244-NICB_ArsonBro2.pdf).

A survey of sentences in fraud cases involving loss that approximates the loss in this case, (which did not involve the devastation and mayhem caused by arson) shows substantial sentences. *United States v. Darren Gadsden*, WDQ 11 0302 ($1.4 million from the Housing Authority of Baltimore City, sentenced to 286 months, Criminal History Category III); *United States v. Oluwaseun Sanya*, PJM 12 0379 and PJM 13 0121 (loss of $251,712, sentenced to 212 months, included two years for Aggravated Identity Theft); *United States v. Irwin Catlett*, RWT 10 101 (loss of $3.8 million, sentenced to 210 months, Criminal History Category III); *United States v. Patrick Belzner*, JFM 12 103 (loss of $22 million, sentenced to 180 months, Criminal History Category V); *United States v. Byron Brown*, WMN 09 0303 (loss of $9.8 million, sentenced to 180 months); *United States v. Toyoshi Alatishe*, CCB 17 519 (loss of $2.3 million, sentenced to 132 months); *United States v. Mark Phillips*, JFM 05 165 (loss of $600,000, 121 months); *United States v. Bratton-Bey*, L 10 580 (loss of $1.2 million, sentenced to 121 months); *United States v. Mohammed Kwaning*, GLR 14 0600 (loss of $250,000, sentenced to 121 months, included two years for Aggravated Identity Theft); *United States v. Alan Fabian*, CCB 07 0355 (loss of $20 million, sentenced to 108 months); *United States v. Atif Malik*, MJG/JKB 16 0324 (loss of approximately $3.3 million, sentenced to 96 months).

Further, as established at trial, and summarized in the facts set out in the PSR, the Defendant engaged in a pattern of obstructive behavior, to include removal of the front doors following the fire, repeated efforts to cast blame on another individual to divert law enforcement, missing hard disk drives that contained the video footage, and the missing video footage from what was provided to law enforcement.

Therefore, this case, which involves both arson and fraud loss of $15 million, as well as obstruction, requires a severe sanction. A sentence of 264 months accomplishes this objective.

Second, under 18 U.S.C. § 3553(a)(2)(B), there is a need "to afford adequate deterrence to criminal conduct." Anyone tempted to commit arson for profit, a crime that is often difficult to detect, investigate, and prosecute, and which frequently requires investment of significant law

enforcement, prosecutorial, and judicial resources, needs to be clear on the potential ramifications of engaging in such conduct. This factor is of added relevance here as this was the second fire at a commercial building owned by the Defendant which resulted in payment on an insurance claim in excess of $10 million. The Government intends to establish the Defendant's involvement with causing the 2007 Grundy Street fire. Clearly, a sanction needs to be imposed to send a signal to this Defendant, as well as to others who would contemplate engaging in arson for profit that acts as a deterrent. A sentence of 264 months accomplishes this objective.

Third, there is a need "to protect the public from further crimes of the defendant" under 18 U.S.C. § 3553(a)(2)(C). While the Defendant is in Criminal History Category I, it is fair to conclude that the Defendant planned the July 29, 2015 fire for a period of time. And as the Government intends to establish at the sentencing hearing, this was not the Defendant's first arson. A sentence of 264 months, followed by 3 years of supervised release, helps to protect the public from the Defendant who has engaged in arson for profit on multiple occasions.

Fourth, "the kinds of sentences available" under 18 U.S.C. § 3553(a)(3) also justifies the sentence that the Government seeks.  The maximum penalty for Counts Two, Three, and Four is 20 years of incarceration as to each count; Count One requires a sentence of 10 years of incarceration which must be run consecutively to the sentence imposed on the other counts; and Count Four has a mandatory minimum of 5 years. In addition, under 18 U.S.C. § 3553(a)(4)(A), the top end of his advisory USSG range is 24 years. A sentence of 264 months, 22 years, is proper and just.

Fifth, a sentence of 264 months helps to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under 18 U.S.C. § 3553(a)(6). As indicated above, Defendants convicted of arson-related offenses receive lengthy prison sentences. And those convicted of fraud offenses involving millions of dollars of loss receive substantial sentences as well. Arson coupled with substantial fraud loss of $15 million, a sentence of 264 months help to avoid unwarranted sentencing disparitites.

## II.     Restitution, Forfeiture, Federal Firearms License

### A.  Restitution

As indicated in the victim impact statement submitted on behalf of Travelers by Mr. Roswell from Niles, Barton, Travelers paid a total of $15,568,106.81 on the claim the resulted from the damage caused by the arson. After applying credits for subrogation and salvage, the net payments issued by Travelers amount to $15,525,602.55. The Government is requesting restitution in this amount.

B. Forfeiture

As established in the Government's Motion for Money Judgment and Preliminary Order of Forfeiture, the Government is seeking forfeiture of specific items specifically listed in that motion and which the proof at trial established are subject to forfeiture. The total amount sought in a money judgment is $15,081,435.55. The difference between the restitution and forfeiture amounts is due to the fact that $15,081,435.55 excludes a portion of the claim paid related to the loss on Claim EOU8360 (Adcor Packaging, LLC).

C. Federal Firearms License

As a result of his convictions, the Defendant cannot be a responsible person on the license of any Federal Firearms License (FFL) and cannot possess the powers with respect to an FFL which would cause him to be a responsible person in fact, regardless of whether he is listed as a responsible person for that license.  A responsible person is any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of a corporation, partnership, or association, insofar as they pertain to firearms.  Defendant must understand that his possession of the powers of a responsible person with respect to an FFL puts him in violation of the Gun Control Act and might subject the FFL to revocation.  Additionally, Defendant must understand that he may not engage in or serve in any capacity with respect to operating an FFL, which would include, but not be limited to, the process of manufacturing firearms by an FFL or maintaining records required of an FFL.

### III.     Response to the Defendant's Sentencing Memorandum

The Defendant has indicated that a sentence at the mandatory minimum, which they acknowledge is 15 years, satisfies the objectives of the parsimony principle in this case. However, a sentence of 15 years would be the sentence imposed if there was no conviction for wire fraud or the wire fraud had only been an attempt, and no payments had been made on the insurance claim the Defendant caused to be filed after the arson. As such, a sentence of 15 years does not take into consideration the $15 million paid on the claim. Such a result would not be fair and just.

The Defendant also made the unsupported and purely speculative claim that any sentence above the mandatory minimum sentence of 15 years "would simply ensure that Mr. Stavrakis will die in prison, and much sooner than he otherwise would." ECF 237 at 3; *Id*. at 5. The Defendant cited generally to health concerns, with no further records or study, in support of this contention. However, the only health concerns noted for this 54 year-old man appear to be high blood pressure and high cholesterol, common health concerns that are easily treated and managed. PSR ¶ 77. With good time credit, the Defendant is looking at release in his early 70's if sentenced to a period of incarceration at the low end of the advisory USSG range.[3]

---

[3] A sentence of 15 years, reduced for good time credit, translates into release at approximately age 67.

For the reasons stated in this letter, the Government respectfully requests that the Court impose a sentence of two-hundred and sixty-four (264) months in the Bureau of Prisons, to be followed by three (3) years of supervised release, and order restitution of $15,525,602.55, forfeiture as outlined in the proposed Motion for Money Judgment and Preliminary Order of Forfeiture, as well as the special assessment of $400.

Very truly yours,

Robert K. Hur
United States Attorney

_____/s/_____
Judson T. Mihok
Paul E. Budlow
Assistant United States Attorney

CC:  Steven H. Levin, Charles N. Curlett, Jr., Counsel to the Defendant
     Nikki Martin, U.S. Probation Officer