IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>    *Plaintiff*, <br><br> v. <br><br> DEMETRIOS STAVRAKIS, <br> a/k/a Dimitrios Stavrakis, a/k/a Jimmy <br>    *Defendant*. | Crim. No. ELH-19-00160 |

**MEMORANDUM**

This criminal case is rooted in an arson that occurred on July 29, 2015, at a commercial property in Baltimore, Maryland owned by the defendant, Demetrios "Jimmy" Stavrakis. As a result of the fire, Mr. Stavrakis recovered about $15 million in insurance proceeds. He was charged with four federal offenses in a Second Superseding Indictment. ECF 94. In particular, the defendant was charged with Using Fire To Commit a Federal Felony (Count One); Wire Fraud (Counts Two and Three); and Malicious Destruction of Real Property by Fire (Count Four).

Trial began on September 9, 2019. ECF 149. On October 24, 2019, the jury convicted the defendant of all charges. *See* ECF 217; ECF 226.

At the sentencing on February 12, 2020, the Court set a surrender date of April 20, 2020. However, that date has been extended several times. The defendant's current surrender date is set for September 30, 2020. ECF 329.

The defendant, who has been designated to FCI Texarkana, has now filed another motion to postpone his surrender date. ECF 330 (the "Motion"). The Motion is supported by a letter from Daniel Collector, M.D., a cardiologist at the University of Maryland, St. Joseph Medical

Group, dated September 15, 2020. ECF 330-1. The government opposes the Motion. ECF 331. No hearing is necessary to resolve the Motion.

## I. Background

On October 29, 2019, after a three-week jury trial, the defendant was convicted of four federal offenses, including arson. ECF 226. Sentencing was held on February 12, 2020. ECF 251. On that date, the Court imposed concurrent terms of imprisonment of five years as to Counts Two, Three, and Four, and a consecutive sentence of ten years as to Count One, for a total term of 15 years of imprisonment. ECF 264. That sentence corresponded to the statutory mandatory minimum. As noted, at the time of sentencing, the Court set a self-surrender date for the defendant of April 20, 2020.

Thereafter, on February 18, 2020, the defendant filed an appeal to the Fourth Circuit. ECF 259. The appeal is pending.

Between the date of sentencing in February 2020 and the defendant's initial self-surrender date of April 20, 2020, the world as we know it has been upended. The nation has been "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[1]

The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020). Due to the pandemic, combined with the defendant's assorted health issues, the Court previously

---

[1] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

extended the defendant's self-surrender date on multiple occasions. *See* ECF 272 (Order of March 23, 2020); ECF 281 (Order of April 30, 2020); ECF 319 (Order of June 24, 2020); ECF 326 (Order of July 29, 2020); ECF 329 (Order of September 2, 2020).

The government consented to two of the extensions. *See*, *e.g.*, ECF 280. However, the government opposes the latest Motion. ECF 331. And, it has filed an exhibit. ECF 333.

The defendant, who is 54 years of age, has been diagnosed with obesity and hypertension. He is also a smoker. *See*, *e.g.*, ECF 322 at 33. And, in connection with the Motion, Dr. Collector asserts that, "after further testing," he is now "even more concerned" about the defendant's health. *Id.* at 2. According to the physician, recent medical testing reveals that the defendant has "severe" coronary artery disease. *Id.* Further, Dr. Collector states: "It is my medical opinion, with a high degree of certainty, that [the defendant] would be at the utmost degree of peril, in a prison population, where the spread of COVID 19, is likely." *Id.* He adds, *id.*: "Heart attack as a result of a COVID infection would be inevitable." And, the doctor states: "Cardiology has requested a nuclear stress test . . . in order to see if further intervention . . . is necessary." *Id.* But, no date for the test has been specified.

Essentially, the government suggests that the Bureau of Prisons ("BOP") can handle the defendant's health conditions. And, it seems to argue that the time has come for the defendant to begin service of his sentence.

## II. Discussion

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Thus, it is not necessary for me to recount in detail its "unprecedented nature and impact." *Id.* But, I underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-*

3

*19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.

Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories…." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available. *Id.* (citation omitted).

As of September 22, 2020, COVID-19 has infected more than 68 million Americans and caused over 200,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed September 22, 2020).  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  The risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance.  Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19.  According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher;  serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type 2 diabetes. *See People of*

4

*Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* And, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019* (COVID-19), *People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020).

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of

5

COVID-19 more likely");[2] *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Nevertheless, as with the country as a whole, the virus persists in penal institutions.[3] As to FCI Texarkana, to which the defendant has been designated, the BOP reports that as of September 22, 2020, three inmates and six staff currently test positive; one inmate and three staff have recovered, and no one has died. *See* https://www.bop.gov/coronavirus/ (last accessed July 19, 2020).

Electronic correspondence submitted by the government suggests that the penal institution believes that it is equipped to handle defendant's health conditions. ECF 333. According to the government, the Bureau of Prisons believes the defendant is merely in need of Care Level 2. But, he would be assessed on arrival. ECF 333-1.

---

[2] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[3] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide," N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

The Court does not intend to grant an indefinite delay of the defendant's reporting date. But, in light of Dr. Collector's letter, the Court is of the view that it would be prudent for defendant to undergo the nuclear stress test, at his own expense, before reporting to the BOP. Therefore, I shall delay the defendant's reporting deadline until November 9, 2020. If the stress test cannot be conducted prior to that date, then it will be up to the BOP to arrange for the test, if it is deemed medically warranted.

An Order follows.


Date:   September 25, 2020                       /s/
                                        Ellen L. Hollander
                                        United States District Judge