IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. ELH-19-160 |
| DEMETRIOS STAVRAKIS, *Defendant.* | |

**MEMORANDUM**

This Memorandum addresses a dispute with respect to a forfeiture order entered in a criminal case. The matter is rooted in an arson that occurred at a commercial property in Baltimore on July 29, 2015. Demetrios Stavrakis, defendant, was prosecuted by the government for arson. He was convicted of multiple charges in connection with the arson, including malicious destruction of property by fire, in violation of 18 U.S.C. § 844(i); use of fire to commit a federal felony, in violation of 18 U.S.C. § 844(b)(1); and wire fraud, under 18 U.S.C. § 1343. *See* ECF 94 (Second Superseding Indictment); ECF 226 (Jury Verdict of October 24, 2019). On February 12, 2020, as part of defendant's sentence, the Court entered a Preliminary Order of Forfeiture ("Preliminary Order") pertaining to various items of property. ECF 254. It also included a money judgment in the amount of $15,081,435.24. *Id.*

Thereafter, the government moved to amend the Preliminary Order and to substitute assets in partial satisfaction of the money judgment. ECF 364. In particular, it sought to include Mr. Stavrakis's one-third membership in 938 Conkling, LLC ("Conkling") and G&J Development, LLC ("G&J"). *Id.* Conkling operates the Blue Hill Tavern, a restaurant and bar in Baltimore. *Id.* at 2. And, G&J owns the real property on which the Blue Hill Tavern is located. *Id.* I shall refer to the two entities collectively as the "Blue Hill Tavern LLCs" or the "LLCs."

The government subsequently entered into a settlement agreement with a third party, Irene Houvardas, a relative of the defendant. Pursuant to the settlement agreement, Ms. Houvardas was to provide payment of $78,700 in place of forfeiture of defendant's membership in the LLCs. ECF 371 (the "Settlement Agreement" or "Settlement"). To effectuate the substitution of assets, the government submitted to the Court a proposed "Order Recognizing Settlement Agreement" (ECF 371-2, "Settlement Order"), which the Court signed on February 22, 2021. ECF 372.

Brett Lockard and Mel Carter, Petitioners, own the remaining two-thirds of the Blue Hill Tavern LLCs. They have filed a "Petition To Intervene And Set-Aside Settlement Agreement." ECF 373 (the "Petition"). Petitioners assert that because Mr. Stavrakis, a convicted felon, retains a one-third membership interest in the LLCs, the LLCs do not qualify for bank loans and pandemic-related government stimulus loans. *Id.* at 5. And, according to Petitioners, without the capacity of the LLCs to obtain new financing, the survival of the Blue Hill Tavern is imperiled. *Id.* at 5-6. Moreover, they contend that they detrimentally relied on the government's prior representations that it would pursue forfeiture of defendant's membership shares in the LLCs. *Id.*

Therefore, Petitioners urge the Court to rescind the Settlement Order. And, they ask the Court to direct the government to pursue forfeiture of defendant's shares of the LLCs. *Id.*

The government opposes the Petition. ECF 374. Petitioners replied. ECF 375.

No hearing is necessary to resolve the Petition. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Petition.

## I. Background

A jury trial began on September 9, 2019 (ECF 149) in the case of *United States v. Stavrakis*, ELH-19-160. On October 29, 2019, Mr. Stavrakis was convicted on all charges: one count of using fire to commit a federal felony, in violation of 18 U.S.C. § 844(h)(1); two counts of wire fraud, in violation of 18 U.S.C. § 1343; and one count of malicious destruction of real property by

fire, in violation of 18 U.S.C. § 844(i). ECF 226. At sentencing on February 12, 2020 (ECF 251), the Court sentenced defendant to a total term of fifteen years' imprisonment. ECF 264 (Amended Judgment). And, by consent (ECF 262), the Court entered an Order on February 25, 2020 (ECF 263), ordering the defendant to pay restitution of $15,525,602.55.

As noted, on February 12, 2020, the Court issued the Preliminary Order against defendant in the amount of $15,081,435.24. ECF 254; *see* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); Fed. R. Crim. P. 32.2(b)(4)(A). As of February 22, 2021, a balance of over $15 million remained outstanding. ECF 371 at 2.

During 2020, the government investigated the value of defendant's shares in the LLCs. It is undisputed that Petitioners aided that effort. The Settlement Agreement states that "an independent appraisal [was] performed in late 2020 at the request of the United States and the [Petitioners]," which valued defendant's membership interest in the LLCs at $78,700, as of September 1, 2020. ECF 371 at 2.

Petitioners assert that "the Government would never have been able to value or even explore the forfeiture" of defendant's shares in the LLCs without Petitioners' cooperation. In particular, they assert, ECF 373 at 6:

> Throughout the forfeiture process by the Government, Petitioners cooperated in providing financials, undertaking interviews and even paying half the cost of the professional valuations which were provided to the Government to justify the pricing of the forfeited asset. Those efforts were performed solely in reliance on the forfeiture proceedings which would permit the salvation of the Blue Tavern LLCs.

In addition, Petitioners report that they "approached Defendant and offered to purchase his entire and complete interests in the companies." *Id.* But, "Defendant refused any offers and refused to negotiate for his exit, even in light of the financials and evaluation reports used by the Government in establishing a fair price for the Settlement Agreement." *Id.*

However, the government asserts that counsel for Petitioners "previously represented to undersigned counsel that Defendant approached Petitioners after his conviction with a proposal to assign his interest in the Blue Hill Tavern LLCs to his wife, and Petitioners rejected the proposal . . . ." ECF 374 at 9-10. According to the government, this leads to the "obvious conclusion that although it may be Petitioners' preferred avenue at this stage, criminal forfeiture is not, and never has been, the only way Petitioners may escape their predicament." *Id.* at 10.

With respect to the predicament of the Blue Hill Tavern, Petitioners describe generally the immense difficulties that the restaurant industry has faced over the past year, including the Blue Hill Tavern, as a result of the global COVID-19 pandemic. *See* ECF 373 at 3-4. To keep the Blue Hill Tavern afloat, Petitioners have, among other things, stopped "taking any wages for themselves." ECF 373 at 5. Nevertheless, they maintain that the restaurant is "fighting for [its] survival." *Id.* Moreover, the economic hardship caused by the pandemic has been compounded by the difficulty in obtaining new sources of financing. According to Petitioners, businesses with greater than twenty-percent ownership by a felon convicted in the last three years are ineligible for loans from the federal Paycheck Protection Program ("PPP"). *Id.* at 4-5. Thus, the LLCs are ineligible for PPP monies because of Mr. Stavrakis's one-third membership. In addition, Petitioners assert: "[T]he loans to the Blue Hill Tavern LLCs for the building and the restaurant were initially due in November, 2020 and are on extensions granting Petitioners only until April, 2021 to resolve any refinancing issues. The lender . . . has indicated that as long as Defendant is a member of the Blue Hill Tavern LLCs, it cannot make a loan to the companies and that it will not further extend the loan which currently exists." *Id.* at 5.

## II. Discussion

Petitioners maintain that the Settlement Agreement must be rescinded for two principal reasons. They contend that 18 U.S.C. § 853 and Rule 32.2(e) mandate substitute forfeiture when

4

the property originally subjected to an order of criminal forfeiture is beyond the government's reach. *See* ECF 373 at 7. Thus, in their view, settlement is impermissible. Second, Petitioners emphasize that they relied upon—and indeed, abetted—the government's initial pursuit of substitute forfeiture of defendant's membership shares in the LLCs. *See id.* at 9-10; ECF 375 at 5-6.

The government counters that Petitioners lack standing to intervene in this criminal case and have no legal grounds to seek rescission of the Settlement Agreement. ECF 374 at 2-4. And, according to the government, the Petition lacks merit in any event, as the government is expressly authorized by statute to settle forfeiture actions, and frequently does so. *Id.* at 5-8.

"Criminal forfeiture statutes empower the Government to confiscate property derived from or used to facilitate criminal activity." *Honeycutt v. United States*, ___ U.S. ___, 137 S. Ct. 1626, 1631 (2017). Among other things, forfeiture deprives a defendant of his "'ill-gotten gains.'" *Id.* (citation omitted). In *Kaley v. United States,* 571 U.S. 320, 323 (2014), the Supreme Court explained: "Criminal forfeitures are imposed upon conviction to confiscate assets used in or gained from certain serious crimes. *See* 21 U.S.C. § 853(a). Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises." (Citation omitted). Similarly, in *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 634 (1989), the Supreme Court observed: "Forfeiture provisions are powerful weapons in the war on crime."

Criminal forfeiture is part of a defendant's sentence. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995); *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014); *United States v. Martin*, 662 F.3d 301, 306 (4th Cir. 2011). Forfeiture is "calculated on the basis of the total proceeds of a crime" and not what is "remaining in the defendant's possession at the time of the sentencing hearing." *Blackman*, 746 F.3d at 144; *see United States v. Hampton*, 732 F.3d 687,

692 (6th Cir. 2013). And, a money judgment is a proper form of criminal forfeiture. *Blackman*, 746 F.3d at 145.

The procedural requirements of criminal forfeiture applicable to this case are set forth in 21 U.S.C. § 853. *See, e.g.*, ECF 373 at 1; ECF 374 at 3-5; *see also* 28 U.S.C. § 2461 ("The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding . . . ."). Section 853(a)(1) provides that "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly" from their criminal offense shall be forfeited to the United States.

Section 853(p) of 21 U.S.C. is titled "Forfeiture of substitute property." Under § 853(p)(2), "the court shall order the forfeiture of any other property of the defendant" if the property subject to forfeiture under § 853(a) is unavailable for various reasons, as set forth in § 853(p)(1). For instance, the substitute property provisions take hold if property subject to forfeiture has, among other things, "been placed beyond the jurisdiction of the court," "been substantially diminished in value," or "been commingled with other property which cannot be divided without difficulty." *Id.* Thus, § 853(p) "'gives the government the ability to receive, in essence, a general judgment against the defendant.'" *United States v. Daugerdas*, 892 F.3d 545, 549 (2d Cir. 2018) (citation omitted).

Section 853(k) establishes a "Bar on intervention." This section states, in pertinent part: "Except as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may-- (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section . . . ." *Id.*

The pathways by which a third party petitioner may defeat criminal forfeiture are set forth in § 853(n) and Fed. R. Crim. P. 32.2. Any "third party who claims an interest in the property to be forfeited may file a petition with the district court contesting the forfeiture." *United States v. Oregon*, 671 F.3d 484, 488 (4th Cir. 2012) (citing Rule 32.2(c)(1)). The court must then conduct

"an 'ancillary proceeding'" to adjudicate the petition. *Oregon*, 671 F.3d at 488 (quoting Rule 32.2(c)(1)). Section 853(n) of 21 U.S.C. supplies the standard for evaluating a petition contesting forfeiture. Under this section, a "third-party claimant is entitled to a forfeited asset only if" he proves, by a preponderance of the evidence, that he "had an interest vested or superior to the defendant before the commission of the offense or was a bona fide purchaser for value." *United States v. Hailey*, 924 F. Supp. 2d 648, 656 (D. Md. 2013) (citing 21 U.S.C. § 853(n)(6)(A)-(B)); *see Oregon*, 671 F.3d at 488 n.1. Thus, "the function of ancillary forfeiture proceedings is to resolve third-party claims of ownership." *United States v. Cox*, 575 F.3d 352, 358 (4th Cir. 2009); *see United States v. Wittig*, 525 F. Supp. 2d 1281, 1288 (D. Kan. 2007) (same).

As noted, the government contends that Petitioners lack standing to challenge the Settlement Agreement and ask the Court to compel substitute forfeiture. *See* ECF 374 at 2-3.[1] I conclude that Petitioners are ineligible for an ancillary proceeding under Rule 32.2 and consideration under § 853(n), and they lack a basis to challenge the Settlement. For one, those provisions give rise to a third-party right of intervention only when the government pursues forfeiture. Here, however, the government opted to forego forfeiture and pursue the Settlement instead. In addition, there is no dispute regarding *ownership* of defendant's membership shares in the Blue Hill Tavern LLCs. Petitioners do not claim an interest in property that the government seeks to forfeit. To the contrary, it is defendant's ownership and membership in the LLCs that has caused business difficulties.

Thus, there is no basis for conducting an ancillary proceeding, whose sole purpose would be to adjudicate claims of ownership. *See Cox*, 575 F.3d at 358; *Wittig*, 525 F. Supp. 2d at 1288. Indeed, the Petition seems to fall squarely within the "Bar on intervention" codified in § 853(k).

---

[1] Petitioners do not substantively address the matter of standing.

Moreover, the government notes that it is well settled that, as a general matter, "third parties may not intervene in a criminal case." ECF 374 at 2 (citing, *inter alia*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

In *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006), the Court observed: "Section 853(p) is not discretionary; rather, the statute mandates forfeiture of substitute assets 'when the tainted property has been placed beyond the reach of a forfeiture.'" And, § 853(i)(2) expressly grants the Attorney General the authority to "compromise claims arising under [§ 853]." In other words, "the Government may by statute compromise claims in the context of a forfeiture." *In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 564 (2d Cir. 2005).

The government identifies several cases that serve as examples of this principle. ECF 374 at 5; *see, e.g.*, *United States v. Devlin*, 18-14574-EE, 2019 WL 1914230, at *1 (11th Cir. Mar. 18, 2019) (per curiam); *United States v. Segal*, 811 F.3d 257, 259 (7th Cir. 2016); *United States v. Madoff*, No. 09-CR-213-DC, 2009 WL 8681361, at *1 (S.D.N.Y. June 29, 2009); *see also United States v. Patel*, 5:11-CR-00031, 2020 WL 5414767, at *1-4 (W.D. Va. Sept. 9, 2020). Moreover, as recognized in the Asset Forfeiture Policy Manual of the Department of Justice: "Parties often agree to substitute forfeiture of a sum of money in place of directly forfeitable property *in connection with a settlement*." U.S. Dep't of Justice, Criminal Division, Money Laundering and Asset Recovery Section, Asset Forfeiture Policy Manual 164 (2019) [hereinafter "Policy Manual"], https://www.justice.gov/criminal-afmls/file/839521/download (emphasis added).[2]

---

[2] The Court may take judicial notice of adjudicative facts. Fed. R. Evid. 201.

Notably, the Policy Manual is not a legal authority. It states in its Foreword:

The Asset Forfeiture Policy Manual sets forth the policies of the Department of Justice. It does not, however, create or confer any legal rights, privileges, or benefits that may be enforced in any way by private parties. *See United States v. Caceres*, 440 U.S. 741 (1979).

In fact, the government has already entered into settlements with two other third parties in this case, as to property subject to the preliminary order of forfeiture. *See* ECF 339 (Order approving settlement agreement with third party in lieu of forfeiture of two cars); ECF 349 (Order approving settlement agreement with third party in lieu of forfeiture of motorcycle).

Nevertheless, Petitioners insist that the only lawful outcome in this case would entail the rescission of the Settlement and forfeiture of defendant's shares in the LLCs. They suggest that Mr. Stavrakis would risk violating the law if he were to transfer his shares to Petitioners or another third party. *See* ECF 373 at 8-9. However, the two cases upon which they rely are inapposite. In *United States v. Baker*, 227 F.3d 955, 967 (7th Cir. 2000), the Seventh Circuit determined, under all of the circumstances, that a defendant's transfer of real property was an "*attempt* to conceal evidence . . . material to an investigation," and thus application of a sentence enhancement for obstruction of justice was not clearly erroneous. (Emphasis in *Baker*). In *United States v. Keeling*, 235 F.3d 533, 536-37 (10th Cir. 2000), the Tenth Circuit reasoned similarly in a case involving a defendant's execution of quitclaim deeds and transfer to his girlfriend and father of real property designated as assets for forfeiture. These cases do not stand for the proposition that any transfer of assets designated for forfeiture, regardless of intent, necessarily risks legal sanction.

The thrust of Petitioners' submissions is that the government's conduct in this case was distasteful and it will lead to a grossly unfair outcome—in effect, the closure of the Blue Hill Tavern. In particular, they insist that the government's conduct in this case created a reliance interest that the Court "cannot eliminate or ignore . . . ." ECF 375 at 3.

To be sure, the predicament in which the LLCs find themselves is regrettable. And, the government's conduct arguably suggests a degree of indifference toward Petitioners' interests. But, Petitioners' interests are not necessarily the government's concern. And, Petitioners do not cite any legal authority that indicates that the Petition falls within the parameters of § 853(n). Nor

9

do they cite any cases with remotely comparable facts or cases in which courts have rescinded a criminal forfeiture settlement on equitable grounds.

Petitioners cite *Daguerdas*, 892 F.3d 545, for the proposition that the government's actions here impede, or potentially threaten, Petitioners' due process rights. However, *Daugerdas* is plainly distinguishable. There, the petitioner, Daugerdas, filed a petition pursuant to § 853(n), asserting an interest in certain accounts made subject to forfeiture in criminal proceedings against her husband. *Id.* at 547. In other words, Daugerdas sought to defeat forfeiture of those accounts. The Second Circuit concluded that the district court's decision not to conduct an ancillary proceeding, on the ground that ownership of the accounts was determined in the husband's criminal proceeding, violated Daugerdas's right to due process. *Id.* at 558.

In contrast, Petitioners have no quarrel regarding the ownership of defendant's shares in the LLCs. Therefore, for reasons explained above, the § 853(n) process is inapplicable.

### III. Conclusion

For the foregoing reasons, I shall deny the Petition.

An Order follows, consistent with this Memorandum.

Date: April 21, 2021                              /s/
                                      Ellen Lipton Hollander
                                      United States District Judge